IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



**FILED**

OCT 1 1 2017

Clerk, U.S. District Court
Texas Eastern

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:17CR_177_ |
| | § | Judge _MAZZANT_ |
| ARLANDO JACOBS (1) | § | |
| CLARENCE ROLAND (2) | § | |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### Count One

> Violation: 18 U.S.C. § 1349 (Conspiracy
> to Commit Wire Fraud)

### A. INTRODUCTION

At all times material to the indictment:

1.     The "Southridge Property" was a residence located at 10309 Southridge
Drive in Rancho Cucamonga, California.  The Bank of New York Mellon owned the
mortgage loan secured by the Southridge Property.

2.     The "Caminito Property" was a residence located at 1644 Caminito
Barlovento, Unit 98, La Jolla, California.  Wells Fargo Bank serviced the mortgage loan
secured by the Caminito Property.

3.     The "Fawn Villa Property" was a residence located at 15502 Fawn Villa
Drive in Houston, Texas.  Bank of America, N.A ("Bank of America") owned the
mortgage loan secured by the Fawn Villa Property.

4.　　The "Haven Property" was a residence located at 3414 Haven Oaks Drive in Houston, Texas. The Federal National Mortgage Association ("FNMA") owned the mortgage loan secured by the Haven Property.

5.　　The "Loetsch Property" was a residence located at 8310 Loetsch Ridge Way in Spring, Texas. Bank of America owned the mortgage loan secured by the Loetsch Property.

6.　　The "Cypress Property" was a residence located at 14407 Cypress Green Drive in Cypress, Texas. Flagstar Bank, F.S.B. ("Flagstar Bank") owned the mortgage loan secured by the Cypress Property.

7.　　The "Grable Property" was a residence located at 1641 Grable Cove Lane in Spring, Texas. The FNMA owned the mortgage loan secured by the Grable Property.

8.　　The "Trail View Property" was a residence located at 1401 Trail View Lane in Frisco, Texas. Wells Fargo Bank owned the mortgage loan secured by the Trail View Property.

9.　　The "Cardinal Property" was a residence located at 2409 Cardinal Way in McKinney, Texas. Bank of America owned the mortgage loan secured by the Cardinal Property.

10.　　The "Fox Property" was a residence located at 4308 Fox Trail Lane in McKinney, Texas. JP Morgan Chase Bank owned the mortgage loan secured by the Fox Property.

11.　　The Bank of New York Mellon, Bank of America, FNMA, Flagstar Bank, Wells Fargo Bank, and JP Morgan Chase Bank were financial institutions.

12. "WFB Account #1" was Wells Fargo Account #7913927179, which was in the name of Federal National Services LLC Expense Account. Defendant, **Clarence Roland** ("**Roland**") and defendant, **Arlando Jacobs** ("**Jacobs**") controlled this bank account.

13. "BOA Account #1" was Bank of America Account #501010642643, which was in the name of Restorelution Reconveyance Corporation. **Roland** and **Jacobs** controlled this bank account.

14. "WFB Account #4" was Wells Fargo Account #9808969332, which was in the name of Globalone Holdings ("Globalone"). **Jacobs** controlled this bank account.

15. "CB Account #1" was Compass Bank Account #6725885189, which was in the name of Greenpoint Loan Servicing Inc. ("Greenpoint"). **Jacobs** controlled this bank account.

16. The USB Account #2 was US Bank Account #153562653904, which was in the name of Restorelution Trustee Corporation. **Roland** controlled this bank account.

17. Greenpoint and InterBank Loan Servicing Corporation ("InterBank") were entities that were controlled by **Jacobs**.

18. "S.D." was a person known to the Grand Jury.

**B. The Conspiracy**

19. From on or about October 16, 2011, through on or about April 13, 2017, **Jacobs, Roland**, and others unknown to the grand jury conspired and agreed together to execute a scheme and artifice to defraud and to obtain moneys and funds by means of false and fraudulent pretenses, representations, and promises, by causing wire

transmissions of signs, signals and writings to be sent in interstate commerce, a violation of 18 U.S.C. Section 1343.

## C. The Manner and Means of the Conspiracy and the Scheme and Artifice

It was a part of the conspiracy and the scheme and artifice that:

20.     The conspirators created fraudulent conveyances that appeared to convey the ownership of real properties from financial institutions, to entities that were controlled by the conspirators, or they made fraudulent representations to owners of real properties in order to cause the individuals to sign deeds that conveyed title to entities controlled by the conspirators.   The conspirators further created false mortgage lien documents that gave the appearance that the original borrower or the entity receiving title to a particular property had borrowed money from either Greenpoint or Interbank to purchase that property, and that the properties were encumbered by mortgage liens in favor of Greenpoint or Interbank, when in fact there was no money borrowed by these individuals or entities.   The conspirators caused these false documents to be filed in the county real estate records where the various properties were located.   The conspirators prepared and filed these fraudulent documents because, as part of the scheme, they would then sell the properties, knowing that the fraudulent conveyances and mortgage lien documents would cause the title companies closing the sales to send the purchaser's money to the entity shown on their fraudulent mortgage lien documents as the lien holders, in order to pay off that lien.   The conspirators knew their actions caused the title companies closing the sales to wire transfer the purchaser's money to pay off the

fraudulent liens to bank accounts the conspirators controlled, instead of to the true mortgage holders.

### D. The Representative Acts of the Conspiracy

On or about the following dates, as acts representative of the conspiracy, **Jacobs, Roland**, and/or other co-conspirators caused the following acts to be committed:

### Southridge Property

21.  On or about October 20, 2011, **Jacobs** and **Roland** caused a Grant Deed for the Southridge Property to be filed with the County Clerk of San Bernardino, California. The document Grant Deed transferred the title of the Southridge Property from the owner/ mortgage borrower to 10309 Southridge Drive Trust, and was purportedly signed by the owner/ mortgage borrower.

22.  On February 27, 2012, **Jacobs** and **Roland** caused a Corporation Assignment of Deed of Trust for the Southridge Property to be filed with the County Clerk of San Bernardino, California. The document assigned the Deed of Trust for the Southridge Property to 10309 Southridge Drive Trust and was purportedly signed by Mitchell Vanburen with Southwest Security Passthrough, LLC.

23.  On or about March 29, 2012, **Jacobs** and **Roland** caused a Deed of Trust for the Southridge Property to be filed with the County Clerk of San Bernardino, California. The document reflected that the 10309 Southridge Drive Trust obtained a loan from InterBank in the amount of $350,000.

24.  On or about August 28, 2012, **Jacobs** and **Roland** caused the Southridge Property to be sold to a third party. **Jacobs** and **Roland** caused the title company that

closed the sale transaction to receive a fraudulent loan payoff document purporting to be from Interbank, which stated the balance due on the loan to 10309 Southridge Drive Trust was $44,118.84. The action, together with the fraudulent conveyances, caused the title company, on or about August 28, 2012, to wire transfer $44,118.84 of the purchaser's funds to BOA Account #1.

**Caminito Property**

25.     On or about October 1, 2013, **Roland** told the owner of the Caminito Property, who had a delinquent mortgage loan for the property, that he wanted to stop the bank's foreclosure process, find out who owned the loan, and to get the loan modified. **Roland** told the owner of the Caminito Property that she needed to sign the Deed in Lieu of Foreclosure conveying the property to **Roland** so that he would have the ability to respond to the involved entities. **Roland**'s representations caused the owner to sign the Deed in Lieu of Foreclose.

26.     On or October 1, 2013, **Jacobs** and **Roland** caused the Deed in Lieu of Foreclosure for the Caminito Property to be filed with the County Clerk in San Diego County, California. The document purportedly conveyed the property from the owner/ original borrower to "Wells Fargo Bank, N.A. its successor in assigns, Southwest Wells Fargo 2006 Corporate Pass-Through Certificates Series 2006, as current beneficiary."

27.     On or about November 4, 2013, **Jacobs** and **Roland** caused a fraudulent Grant, Bargain, and Sale Deed for the Caminito Property to be filed with the County Clerk in San Diego County, California. The document appeared to transfer the property

from Southwest Wells Fargo 2006 Corporate Pass-Through Certificates Series 2006 to Annanias & Sapphira Investors Group LLC for $685,000.

28.     On or about November 4, 2013, **Jacobs** and **Roland** caused a fraudulent Deed of Trust for the Caminito Property to be filed with the County Clerk in San Diego County, California.  The document alleged that Annanias & Sapphira Investors Group LLC obtained a loan from InterBank in the amount of $445,250.

29.     On or about December 9, 2013, **Jacobs** and **Roland** caused the Caminito Property to be sold to a third party.  On or about December 9, 2013, **Jacobs** and **Roland** caused the title company that closed the transaction to receive a fraudulent loan payoff document allegedly from InterBank, which stated the balance due on the loan to Annanias & Sapphira Inv. Group was $474,010, which together with the other false documents, caused the title company to wire transfer $474,010 of the purchaser's funds to WFB Account #1.

30.     On December 13, 2013 and December 19, 2013, **Jacobs** and **Roland** used funds from the WFB Account #1 to purchase two cashier's checks for **Roland** in the amounts of $80,000 and $20,000.

**Fawn Villa Property**

31.     On or about September 10, 2014, **Jacobs** and **Roland** caused a fraudulent Special Warranty Deed for the Fawn Villa Property to be filed with the County Clerk in Harris County, Texas.  The document conveyed the property from Bank of America to 2010 Nationwide REO Fawn Villa Trust.  The deed was purportedly signed by a

representative of Bank of America and notarized by S.D., who in fact had not notarized the document.

32.     On or about September 10, 2014, **Jacobs** and **Roland** caused a fraudulent Deed of Trust for the Fawn Villa Property to be filed with the County Clerk in Harris County, Texas.  The document alleged that 2010 Nationwide REO Fawn Villa Trust obtained a loan from Bank of America in the amount of $77,000 to purchase the Fawn Villa Property.

33.     On or about September 25, 2014, **Jacobs** and **Roland** caused a fraudulent Corporation Assignment of Deed of Trust for the Fawn Villa Property to be filed with the County Clerk in Harris County, Texas.  The document purported to assign the Deed for Trust from Bank of America to Greenpoint.

34.     On or about October 20, 2014, **Jacobs** and **Roland** caused the Fawn Villa Property to be sold by 2010 Nationwide REO Fawn Villa Trust to a third party.

35.     On or about October 21, 2014 **Jacob** and **Roland** caused the title company that closed the transaction to receive a fraudulent loan payoff document, purportedly from Greenpoint, which stated the balance due on the loan to 2010 Nationwide REO Fawn Villa Trust was $81,857.61.  The payoff statement along with the other fraudulent documents, caused the title company, on or about October 21, 2014, to wire transfer $81,857.61 of the purchaser's money to CB Account #1.

**Haven Property**

36. On or about September 10, 2014, **Jacobs** caused a fraudulent Special Warranty Deed to be filed with the County Clerk in Harris County, Texas. The document purportedly conveyed the Haven Property from FNMA to 2007 Mangus Haven Oaks Drive REO Trust.

37. On or about September 10, 2014, **Jacobs** caused a fraudulent Deed of Trust to be filed with the County Clerk in Harris County, Texas. The document alleged that 2007 Mangus Haven Oaks Drive REO Trust obtained a loan from Bank of America in the amount of $115,000 to purchase the Haven Property.

38. On or about October 15, 2014, **Jacobs** caused a fraudulent Corporation Assignment of Deed of Trust to be filed with the County Clerk in Harris County, Texas. The document alleged that Bank of America assigned and transferred the loan made to 2007 Mangus Haven Oaks Drive REO Trust to Greenpoint.

39. On or about November 24, 2014, **Jacobs** caused the Haven Property to be sold to a third party. Jacobs caused the title company that closed the sale to receive a fraudulent payoff statement from Greenpoint, which alleged the payoff for the loan on the property was in excess of $106,800. Based on this information and the previously mentioned documents, the title company wire transferred $106,886.43 of the purchaser's money to CB Account #1.

**Loetsch Property**

40. On or about October 15, 2014, **Jacobs** caused a fraudulent Special Warranty Deed for the Loetsch Property to be filed with the County Clerk in Harris

County, Texas. The document allegedly conveyed the Loetsch Property from Bank of America to National Loetsch Ridge REO Holding Trust.

41. On October 15, 2014, **Jacobs** caused a fraudulent Deed of Trust for the Loetsch Property to be filed with the County Clerk in Harris County, Texas. The document alleged that National Loetsch Ridge REO Holding Trust obtained a loan from Greenpoint in the amount of $92,500 to purchase the Loetsch Property, and it was purportedly notarized by S.D., who in fact had not notarized the document.

42. On or about April 9, 2015, **Jacobs** caused the Loetsch Property to be sold and caused the title company closing the sale to receive a fraudulent payoff statement from Greenpoint, stating the payoff for the loan from Greenpoint was $91,685.34. Based on this and the previously mentioned filed documents the title company wire transferred $91,685.34 of the purchaser's money to CB Account #1.

**Cypress Property**

43. On October 15, 2014, **Jacobs** caused a fraudulent Special Warranty Deed for the Cypress Property to be filed with the County Clerk in Harris County, Texas. The document allegedly conveyed the Cypress Property from Flagstar Bank to Texas Standard Cypress Green REO Trust, and was purportedly notarized by S.D., who in fact had not notarized the document.

44. On or about October 15, 2014, **Jacobs** caused a fraudulent Deed of Trust for the Cypress Property to be with the County Clerk in Harris County, Texas. The document alleged that Texas Standard Cypress Green REO Trust obtained a loan from Bank of America in the amount of $155,000 to purchase the Cypress Property.

45.     On or about March 25, 2015, **Jacobs** caused a fraudulent Corporation Assignment of Deed of Trust for the Cypress Property to be filed with the County Clerk in Harris County, Texas. The document alleged that Bank of America assigned and transferred the Deed of Trust to Greenpoint.

46.     On or about May 14, 2015, **Jacobs** caused the Cypress Property to be sold to a third party. On or about May 14, 2015 **Jacobs** caused the title company conducting the closing of the sale of the property to receive a fraudulent payoff statement from Greenpoint that stated the payoff on the Greenpoint loan for the Cypress Property was $121,312.77, and based on this and the other fraudulent documents the title company, on May 20, 2015, wire transferred $121,312.77 of the purchaser's money to CB Account #1.

**Grable Property**

47.     On or about October 6, 2014, **Jacobs** caused a fraudulent Special Warranty Deed for the Grable Property to be filed in with the County Clerk in Harris County, Texas. The document allegedly conveyed the Grable Property from FNMA to 2014 Grable Cove Lane REO Trust.

48.     On or about October 6, 2014, **Jacobs** caused a fraudulent Deed of Trust for the Grable Property to be filed with the County Clerk in Harris County, Texas. The document alleged that 2014 Grable Cove Lane REO Trust obtained a loan from Greenpoint in the amount of $86,000.

49.     On or about July 27, 2015, **Jacobs** caused the Grable Property to be sold to a third party.

50.    On or about July 28, 2015, **Jacobs** caused the title company to receive a fraudulent payoff statement from Greenpoint stating the payoff on the Greenpoint loan to purchase the Grable Property was $109,116.62, and based on this and the previously mentioned filed documents, on July 28, 2015, the title company wire transferred $109,116.62 of the purchaser's money from their office located in Whitehouse, Texas, in the Eastern District of Texas, to CB Account #1, which wire transfer travelled to New York, New York prior to returning to Texas.

**Trail View Property**

51.    On or about June 3, 2016, **Jacobs** caused a fraudulent Substitute Trustee's Deed for the Trail View Property to be filed with the County Clerk in Denton County, Texas, in the Eastern District of Texas. The document allegedly conveyed the property from Wells Fargo Bank, N.A. to 2015 GPLT CTKV Trust 1401 GB Series Trust.

52.    On or about June 3, 2016, **Jacobs** caused a fraudulent Deed of Trust for the Trail View Property to be filed with the County Clerk in Denton County, Texas, in the Eastern District of Texas. The document alleged that 2015 GPLT CTKV Trust 1401 GB Series Trust obtained a loan from Greenpoint in the amount of $329,000 to purchase the Trail View Property.

53.    On or about November 17, 2016, **Jacobs** caused the Trail View Property to be sold to a third party.

54.    **Jacobs** caused the title company that closed the sale transaction to receive a fraudulent payoff statement from Greenpoint that stated the payoff on Greenpoint's loan to purchase the Trail View Property was $293,118.77, and this and the other fraudulent

documents caused the title company to wire $293,118.77 on November 18, 2016 to CB Account #1.

### Cardinal Property

55.     On or about June 3, 2016, **Jacobs** caused a fraudulent Substitute Trustee's Deed for the Cardinal Property to be filed with the County Clerk in Collin County, Texas, in the Eastern District of Texas. The document allegedly conveyed the property from Bank of America to 2008 GPLT CTKV Trust 2409 GB Series Trust.

56.     On or about June 3, 2016, **Jacobs** caused a fraudulent Deed of Trust for the Cardinal Property to be filed with the County Clerk in Collin County, Texas, in the Eastern District of Texas. The document alleged that 2008 GPLT CTKV Trust 2409 GB Series Trust obtained a loan from Greenpoint in the amount of $218,000, to purchase the Cardinal Property.

57.     On or about December 22, 2016, **Jacobs** caused the Cardinal Property to be sold to a third party. **Jacobs** caused the title company that closed the transaction to receive a fraudulent payoff statement from Greenpoint stating that the payoff of Greenpoint's loan to purchase the Cardinal Property was $186,328.33, and this and the other fraudulent documents caused the title company on December 23, 2016, to wire transfer $186,328.33 of the purchaser's money to CB Account #1.

### Fox Property

58.     On or about June 3, 2016, **Jacobs** caused a fraudulent Substitute Trustee's Deed for the Fox Property to be filed with the County Clerk in Collin County, Texas, in

the Eastern District of Texas. The document allegedly conveyed the property from JP Morgan Chase Bank N.A. ("JPM") to 2008 GPLT CTKV Trust 4308 GB Series Trust.

59. On or about June 3, 2016, **Jacobs** caused a fraudulent Deed of Trust for the Fox Property to be filed with the County Clerk of Collin County, Texas, in the Eastern District of Texas. The document alleged that 2008 GPLT CTKV Trust 4308 GB Series Trust obtained a loan from Greenpoint in the amount of $544,000 to purchase the Fox Property.

60. On or about April 6, 2017, **Jacobs** caused the Fox Property to be sold to a third party.

61. On or about April 12, 2017, **Jacobs** caused the title company to receive a fraudulent payoff notice from Greenpoint stating that the payoff on Greenpoint's loan to purchase the Fox Property was $418,323.53, and this document, along with the previously mentioned filed documents, caused the title company, on April 12, 2017, to wire transfer $418,323.53 of the purchaser's money to CB Account #1.

All in violation of 18 U.S.C. Section 1349.

## Count Two

Violation: 18 U.S.C. § 1344
(Bank Fraud)

62. The Grand Jury realleges Paragraphs 7, 11, 17, 20, and 47-50 of Count One of this Indictment and further alleges that:

63. On or about July 28, 2015, in the Eastern District of Texas, **Jacobs**, having devised a scheme and artifice to defraud the FNMA and to obtain money, funds and

property under the control of the FNMA, did knowingly execute and attempt to execute the scheme and artifice by causing the title company that was closing the sale of the Grable Property to receive a fraudulent payoff statement stating that $109,116.62 would need to be paid to Greenpoint in order to pay off a purchase loan for the Grable Property.

All in violation of Title 18, U.S.C. § 1344

## Count Three

Violation: 18 U.S.C. § 1344
(Bank Fraud)

64.     The Grand Jury realleges the allegations contained in Paragraphs 10, 11, 17, 20 and 58-61 of Count One of this Indictment and further alleges that:

65.     On or about June 3, 2016, **Jacobs**, having devised a scheme and artifice to defraud JPM and to obtain money, funds and property under the control of JPM, did knowingly execute and attempt to execute the scheme and artifice by causing a fraudulent Substitute Trustee's Deed for the Fox Property to be filed in the Office of the County Clerk of Collin County, Texas, within the Eastern District of Texas.

All in violation of Title 18 U.S.C. § 1344.

## Count Four

Violation: 18 U.S.C. § 1343
(Wire Fraud)

66.     The Grand Jury realleges the allegations contained in Paragraphs 7, 11, 17, 20, and 47-50 of Count One of this Indictment, and further alleges that:

67.     On or about July 28, 2016, in order to execute and to attempt to execute a scheme and artifice to defraud and to obtain money and property by false and fraudulent pretenses, representations and promises, **Jacobs** caused a wire transfer to be made from a location in Whitehouse, Texas, in the Eastern District of Texas, which wire transfer crossed the State of New York, before returning to Texas.

All in violation of Title 18 U.S.C. § 1343

## Counts Five through Six

Violation:  18 U.S.C. § 1028A
(Aggravated Identity Theft)

68.     The Grand Jury realleges Paragraphs 5, 6, 11, 17, 18, 20 and 40-46 of Count One of this Indictment, and further alleges that:

69.     On or about the following dates, in the Eastern District of Texas, during and in relation to a violation of 18 U.S.C. Section 1349, Conspiracy to Commit Wire Fraud, **Jacobs** knowingly possessed, transferred and used without lawful authority, a means of identification S.D., a person known to the Grand Jury by causing the name of S.D. to be reflected as the person notarizing the following documents:

| Count | Date | Document |
|-------|------|----------|
| 5 | 10/15/2014 | Deed of Trust for the Loetsch Property |
| 6 | 10/15/2014 | Special Warranty Deed for Cypress Property |

All in violation of Title 18 U.S.C. § 1028A.

## Count 7

Violation:  18 U.S.C. § 1028A
(Aggravated Identity Theft)

70.     The Grand Jury realleges the allegations contained in Paragraphs 3, 11, 17, 18, 20, and 31-35 of Count One of this Indictment and further alleges that:

71.     On or about September 10, 2014, within the Eastern District of Texas, **Jacobs** and **Roland**, during and in relation to a violation of 18 U.S.C. 1349, Conspiracy to commit Wire Fraud, knowingly possessed, transferred and used, without lawful authority, used the means of identification of S.D., by causing the name of S.D. to be reflected as the person notarizing a Warranty Deed for the Fawn Villa Property

All in violation of Title 18 U.S.C. § 1028A

# NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

## Pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461

As the result of committing the offenses alleged in this Indictment, the defendants shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461 all property, real or personal, that constitutes or is derived from proceeds traceable to the aforementioned offenses, including but not limited to the following:

**Cash Proceeds**

All United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate is property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the foregoing offenses alleged in this Indictment.

**Substitute Assets**

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants –

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with a third person;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(a)(4), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property,

including but not limited to all property, both real and personal owned by the defendants,

including currency in the following bank accounts and the following automobiles:

1. **BOA Account #1**
   - Bank Name:        Bank of America, N.A.
     Account Number:   501010642643
     Account Name:     Restorelution Reconveyance Corporation
                       AKA:  Reconveyance Corporation

2. **BOA Account #2**
   - Bank Name:        Bank of America, N.A.
   - Account Number:   76484005
   - Account Name:     Jacorp Industries, Inc.

3. **WFB Account #1**
   - Bank Name:        Wells Fargo Bank
   - Account Number:   7913927179
   - Account Name:     Federal National Services LLC
                       AKA:  Federal National Services LLC Expense
                       Account

4. **CB Account #1**
   - Bank Name:        BBVA Compass Bank
   - Account Number:   6725885189
   - Account Name:     Greenpoint Loan Servicing, Inc.
   - Amount:           $21.24

5. **WFB Account #2**
   - Bank Name:        Wells Fargo Bank
   - Account Number:   2625018144
   - Account Name:     Jacorp Industries, Inc.

6. **COB Account #1**
   - Bank Name:        Capital One Bank, NA
   - Account Number:   1537854819
   - Account Name:     Global Holdings Trust

7. **PNC Account #1**
   - Bank Name:        PNC Bank
   - Account Number:   1220075981
   - Account Name:     New Century Loan Servicing LLC
   - Amount:           $325.25

8. **COB Account #3**
   - Bank Name:          Capital One Bank, NA
   - Account Number:     1537854622
   - Account Name:       Fraudclosure Protection Services, LLC

9. **PNC Account #2**
   - Bank Name:          PNC Bank
   - Account Number:     1219715478
   - Account Name:       New Century Loan Servicing LLC
   - Amount:             $1,962.00

10. **COB Account #4**
   - Bank Name:          Capital One Bank, NA
   - Account Number:     3027005917
   - Account Name:       Global Holdings Trust

11. **COB Account #5**
   - Bank Name:          Capital One Bank, NA
   - Account Number:     3027005925
   - Account Name:       Global Holdings Trust

12. **Private Assets Trust Account**
   - Bank Name:          JP Morgan Chase Bank
   - Account Number:     438285202
   - Account Name:       Private Assets Trust
   - Amount:             $855,314.60

13. **Assets Holding Trust Account**
   - Bank Name:          Wells Fargo Bank
   - Account Number:     8034554678
   - Account Name:       Assets Holding Trust
   - Amount:             $49,444.59

14. **Private Equity Trust Account**
   - Bank Name:          JP Morgan Chase Bank
   - Account Number:     43828512
   - Account Name:       Private Equity Trust
   - Amount:             $87,867.94

The Following automobiles:

### 15. Escalade #1
- Color:          White
- Year:           2007
- Make:           Cadillac
- Model:          Escalade ESV
- VIN:            1GYFK66847R253908

### 16. Maserati
- Color:          White
- Year:           2009
- Make:           Maserati
- Model:          Quattroporte
- VIN:            ZAMFK39A690044899

### 17. BMW Alpina
- Color:          White
- Year:           2011
- Make:           BMW
- Model:          Alpina B7
- VIN:            WBAKB8C55BC447818

### 18. Escalade #2
- Color:          Black
- Year:           2015
- Make:           Cadillac
- Model:          Escalade ESV
- VIN:            1GYS4JKJ2FR200336

### 19. Mercedes
- Color:          White
- Year:           2008
- Make:           Mercedes-Benz
- Model:          550 GL
- VIN:            4JGBF86E68A298760

By virtue of the commission of the offenses alleged in this Indictment, any and all interest the defendants have in the above-described property is vested in and forfeited to the United States.

A TRUE BILL.

_____
GRAND JURY FOREPERSON

BRIT FEATHERSTON
ACTING UNITED STATES ATTORNEY

_____
J. Andrew Williams
Assistant United States Attorney

10-11-2017
_____
Date

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. 4:17CR |
| v. | § | Judge |
| | § | |
| ARMANDO JACOBS (1) | § | |
| CLARENCE ROLAND (2) | § | |

## NOTICE OF PENALTY

### Count One

**Violation:** 18 U.S.C. § 1349, Conspiracy to Commit Wire Fraud

**Penalty:** Imprisonment for not more than thirty years, a fine not to exceed $1,000,000, and a term of supervised release of not more than five years.

**Special Assessment:** $100.00

### Count Two and Three

Violation: 18 U.S.C. § 1344, Bank Fraud

**Penalty:** Imprisonment for not more than thirty years, a fine not to exceed $1,000,000, and a term of supervised release of not more than five years.

**Special Assessment:** $100.00

## Count Four

Violation:     18 U.S.C. § 1343, Wire Fraud

Penalty:       A fine of not more than $250,00 or twice the gross pecuniary gain or
               loss, and/ or imprisonment for not more than 20 years, and a term of
               supervised release for not more than 5 years.

Special
Assessment:    $100.00


## Count Five Through Seven

Violation:     18 U.S.C. § 1028A  (Aggravated Identity Theft)

Penalty:       A fine of not more than $250,000, or twice the gross pecuniary gain
               or loss, and imprisonment for two years to run consecutively to any
               other sentence, and a term of supervised release for one year.

Special
Assessment:    $100.00