

FILED

DEC 0 5 2023

Clerk, U.S. District Court
Eastern District of Texas

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA. | ) | |
| | ) | |
| v. | ) | Case No.: 4:17-cr-00177 |
| | ) | |
| | ) | |
| CLARENCE ROLAND III | ) | |
| Pro Se | ) | |

<u>MOTION FOR RECONSIDERATION OF ORDER ECF 72</u>

**To The Honorable Judge Amos L. Mazzant:**

Clarence Roland, the defendant/prisoner moves Pro Se in the above case requesting the Court reconsider its motion of dismissal without prejudice (See EDTX ECF Doc. 72) be modified to dismissal with prejudice pursuant to Federal Rules of Criminal Procedures; Rule 60 and 48 which addresses the dismissal of criminal charges and contains provisions that allow the government to dismiss charges. The defendant/prisoner also incorporates all the grounds that were stated in the prisoner's errant 2255 petition EDTX CASE 4:20-cv-00126 in support of granting modification of the Order.

Specifically, Rule 60 states:

Rule 60 of the Federal Rules of Criminal Procedure allows a court to order the dismissal of a case with prejudice, which means the case cannot be brought back to court. Generally, the court may order dismissal with prejudice for several reasons, including:

- **Prosecutorial Misconduct:** If the government's actions or misconduct significantly prejudice the defendant's right to a fair trial, the court may dismiss the case with prejudice.

**Double Jeopardy:** If the defendant has already been acquitted or convicted of the same offense in a previous trial, they may be protected by double jeopardy, and the court may dismiss with prejudice.

**Violation of the Speedy Trial Act:** If the government fails to bring a defendant to trial within the time limits set by the Speedy Trial Act, the court may dismiss the case with prejudice.

1

**Other Exceptional Circumstances: In**
exceptional situations where justice requires it, the court may order a dismissal with
prejudice.

The decision to dismiss with prejudice is at the discretion of the court and typically
depends on the specific circumstances of the case.

Rule 60. Relief from a Judgment or Order: And Federal Rule of Criminal Procedure 60:

Rule 60 in the Federal Rules of Criminal Procedure addresses relief from a judgment or
order. It provides various grounds under which a party may seek relief from a final
judgment, order, or proceeding, such as mistake, newly discovered evidence, fraud, and
other reasons for relief.

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just
terms, the court may relieve a party or its legal representative from a final judgment,
order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been
discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or
misconduct by an opposing party; (EDTX CASE NO 4:20-cv-00126 Arraignment Hearing
ECF DOC 1-9 Page ID# 47-60).

The Special Agent, Stephen Hanley, on the case characterized the prisoner's arrival in
TXSD as a simple transfer between venues,  rather than the prisoner returning to the
United States after a dismissal and transport back to the place of his original
imprisonment in another member sending state.

(4) the judgment is void;

 In Bozeman v. Alabama the court held:
"If trial is not had on any indictment, information, or complaint contemplated hereby prior
to the prisoner's being returned to the original place of imprisonment pursuant to article
V(e) hereof, such indictment, information, or complaint *shall not be of any further force
or effect, and the court shall enter an order dismissing the same with prejudice."*
(Emphasis added.)"  In other words "void."

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier
judgment that has been reversed or vacated; or applying it prospectively is no longer
equitable; or

(6) any other reason that justifies relief.

(c) Timing and Effect of the Motion.

(1) Timing. A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

(2) Effect on Finality. The motion does not affect the judgment's finality or suspend its operation.

(d) Other Powers to Grant Relief. This rule does not limit a court's power to:

(1) entertain an independent action to relieve a party from a judgment, order, or proceeding;

(2) grant relief under 28 U.S.C. §1655 to a defendant who was not personally notified of the action; or

(3) set aside a judgment for fraud on the court. (EDTX CASE NO 4:20-cv-00126 Arraignment Hearing ECF DOC 1-9 Page ID# 47-60).

The mischaracterization by an Agent on the case, represented a false scenario as to how the prisoner came to the TXSD, which seems to the prisoner to be a form of fraud on the court.

Rule 48. Dismissal

(a) By the Government. The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent.

(b) By the Court. The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in: (See Defendant Trial Brief Motion in Limine pg 2-3 "Statement of Case" San Diego Superior Court California Exhibit #5).

(1) presenting a charge to a grand jury;

(2) filing an information against a defendant; or

(3) bringing a defendant to trial.

The EDTX brought the prisoner to the District on a detainer and Writ of Habeas Corpus Ad Prosequendum  and an arrest warrant and failed to bring the prisoner to trial before returning him to the original place of his imprisonment.

The prisoner is currently incarcerated at the Federal Correctional Institution in Sheridan Oregon Satellite Camp.

Defendant/Prisoner files this motion for Dismissal With Prejudice and request for reconsideration pursuant to Interstate Agreement on Detainers 18 U.S.C.S. App. 2 "IAD" and the Speedy Trial Act (18 USCS 3161 et seq.) "STA."

## I. JURISDICTION TO MODIFY ORDER

"The court has jurisdiction to modify the original order pursuant to federal laws and Supreme Court opinions that recognize the Court's authority pursuant to Interstate Agreement on
Detainers (IAD).

In this case the Court has jurisdiction to grant appropriate relief of Dismissal with Prejudice. The following legal authorities support this position:

Federal law, specifically the "Interstate Agreement on Detainers, 18 U.S.C.S. App. Agreement on Detainers "IAD" provides the jurisdiction for this court to modify its order of dismissal without prejudice and grant a dismissal with prejudice. The Supreme Court has consistently recognized the importance of Interstate Agreement on Detainers and their binding nature on member states." In Carchman v. Nash, 473 U.S. 716 (1985), The Supreme Court emphasized "the need for strict compliance with the IAD, stating that its provisions must be "liberally construed to effectuate its purposes."

1. In United States v. Morgan, 346 U.S. 502 (1954):" In this Supreme Court case, the Court recognized that a dismissal without prejudice can be modified to a dismissal with prejudice if the prisoner's constitutional rights have been violated. This case establishes that constitutional violations can be a basis for modifying a dismissal."

In this case the prisoner/defendant who shall be referred to  as "prisoner" in this case, Sixth Amendment right to a speedy trial is a constitutional protection that was denied the prisoner.  After the prisoner was transported to the Eastern District of Texas "EDTX" the prisoner filed for final disposition of his charges and the charges were dismissed without indicating whether it was without or with prejudice and the prisoner was transported back to the place of his original imprisonment in San Diego County California. The California San Diego County court interpreted the dismissal as without prejudice,  when the motion does not notate "with or without prejudice". (SEE Once In Jeopardy EDTX CASE NO. 4:20-CV-126 ECF DOC. 6 Pg. ID 29-39 Ex. 4).

While in the EDTX, the prisoner requested final disposition of all charges in writing in May 2018 and verbally before the Judge on August 7th 2018. And charges were dismissed and the prisoner was then transported in October 2018, back to San Diego County California, the place of his original imprisonment without trial. One of the primary reasons for the IAD is to reduce the uncertainties that delays and transfers cause. (See Speedy Trial Assertion Case No. 4:17-cr-00177 ECF Doc. 8 Pg ID# 46).

On August 7,l 2018  the prisoner appeared before Judge Amos L. Mazzant and explained that "the elements of the offense do not exist," that the prisoner was both factually, actually and legally innocent of the crimes charged.

In this case, the right to a speedy trial is considered a constitutional protection. It's guaranteed by the Sixth Amendment of the United States Constitution, ensuring that a prisoner is brought to trial within a reasonable time frame. If this right is violated, it could potentially lead to the dismissal of charges against the prisoner. However, whether a specific violation constitutes a reversible error would depend on the circumstance and the impact on the prisoner's case.

A reversible error occurred in the EDTX in this instant case because the prisoner was deliberately prevented from disposing of his State case in California after an unreasonable period of delays caused by the prosecution in California in concert with Special Agents Rodney Connor and Stephen Hanley , and after the prisoner invoked his speedy trial rights pursuant to CA Penal Code 1381 and 1382, and after requesting a standard waiting period to stand trial in California, the EDTX denied the request. And after the prisoner arrived in the EDTX, and was appointed an attorney, arraigned and remanded into custody the case was subsequently dismissed by the government. (See Order of Dismissal EDTX CASE NO 4:17-cr-00177 ECF Doc. 72).

In addition to awaiting trial for nearly two years in San Diego County jail and having accrued 2-Days for every 1-Day served in California due to the prisoner engaging in rehabilitative programming,  the prisoner was abruptly removed from San Diego County within weeks before trial was set to happen. The EDTX demanded the prisoner's immediate presence in the EDTX to stand trial on the identical business conduct and properties the prisoner was being prosecuted for in California. But apparently once the prisoner arrived in the EDTX, the government was not ready to go to trial.  The prisoner was not present for any continuances, nor was the prisoner made aware that there were any continuances filed or requested by the prisoner or his defense. (See EDTX Docket Report Case 4:17-cr-00177).

## II. PROCEDURAL BACKGROUND

In November 2015 the defendant/prisoner  hereafter "prisoner" was arrested in Tacoma Washington on State of California charges with a One Million dollar bond and placed in custody awaiting trial in San Diego County California on charges of filing false

instruments and grand theft, related to the prisoner 's business conduct as a Chief Trustee in a 4-Phase Civil Administrative Quiet Title Process. All charges involved properties in San Diego County California. (See Defendant Trial Brief Motion in Limine pg 2-3 "Statement of Case" San Diego Superior Court California Exhibit #5).--------------

While the prisoner was in custody for nearly two years awaiting trial in San Diego County California, he was engaged in a number of rehabilitation programs which included being enrolled in classes such as food handling and restaurant management and worked as a GED tutor in math as well as holding regular Bible study classes, which earned the prisoner two-days for every one-day served. The prisoner rejected a number of plea offers prior to trial for time-served and elected to exercise his constitutional right to a jury trial. The prisoner remained in San Diego County custody as a prisoner until October 2018 where he rejected another time-served offer, with global resolution including the federal case. just before trial in that case, set for December 2017. However in October 2017 after rejecting a plea and invoking the prisoner 's speedy trial rights pursuant California Penal Code 1832, the prisoner was informed that the Federal Government had issued a Writ of Habeas Corpus Ad Prosequendum in the Eastern District of Texas "EDTX". The prisoner was told that San Diego was not sure when the prisoner would be needed in the EDTX. The prisoner's attorney William Sharp contacted AUSA Chris Eason in the EDTX and was told that the prisoner is being requested immediately in the EDTX. The prisoner attorney requested a 30-day extension of the writ in order that the prisoner, who had already been in custody for nearly two years, could stand trial before being transported to the Eastern District of Texas ``EDTX.''

The prisoner was proceeding to trial in San Diego County California, when the prisoner through his appointed counsel requested additional time from EDTXs AUSA Eason to stand trial in California before being transferred to EDTX, the request was denied. The request for an extension was denied and an arrest warrant was executed by US Marshals causing the prisoner to immediately begin transport to the Eastern District of Texas "EDTX," . (SEE Arrest Warrant EDTX CASE NO. 4:20-CV-126 ECF DOC. 5 EX 3).

1. "IAD Section IV(a) allows a governor 30 days in which to disapprove a request for transfer on his/her own motion or that of the prisoner. It has been held, however, that a State governor does not have the right to disapprove a request issued in the form of a writ of habeas corpus ad prosequendum by a Federal court even when a detainer has been previously lodged. *See* **United States v. Graham**, 622 F.2d 57 (3rd Cir.), *cert. denied*, 449 U.S. 904 (1980). *See*, however, **United States v. Scheer**, 729 F.2d 164, 170 (2d Cir. 1984). The Attorney General has delegated the authority to pass upon State requests under the Agreement to the Bureau of Prisons. *See* 28 C.F.R. Sec. 0.96(n); *see also*, 28 C.F.R. Sec. 527.31(a).

AUSA Chris Eason denied the prisoner the additional time or waiting period to stand trial in San Diego County California on the identical business conduct that he was being charged with in the Eastern District of Texas. The AUSA was informed that the prisoner had a liberty interest in going to trial immediately in California at that time due to the amount of preparation that had taken place. The prisoner believes he was denied the extension in order to increase the degree of prejudice the prisoner would incur due to the

apparent emergency nature of the federal government's need for the prisoner's immediate removal from San Diego County California. AUSA Christopher Eason indicated it was urgent and the prisoner needed to be placed in federal custody and to stand trial in EDTX. The denial also seemed to be intended to deny the prisoner the rehabilitation credits he accrued for his continuous custody and the medical treatment that the prisoner was in desperate need of.

Because the prisoner was demanded immediately by AUSA Eason in the EDTX (SEE Arrest Warrant EDTX CASE NO. 4:20-CV-126 ECF DOC. 5 EX 3). US Marshals executed the arrest warrant at the direction of EDTX  and removed the prisoner from San Diego County California by US Marshals on criminal Case No. 4:17-cr-00177 (See "Statement of Case" San Diego County California Case No.SCD255517, DA NO. ADY305 "Trial Brief and Motion in  concerning transport to and from federal jurisdictions and the impact on bail and trial. Page #2-5 Exhibit #7).

The magistrate for the Eastern District of Texas signed a Writ of Habeas Corpus Ad Prosequendum requesting the defendant/prisoner's immediate transport to the EDTX to be arraigned and stand trial on Conspiracy to Commit Wire Fraud, Bank Fraud, Identity Theft and Money Laundering and various other charges. (See Case No. 4:20-cv-00126 Arrest Warrant EDTX ECF Doc 5 Exhibit #3).

The prisoner was transferred through Oklahoma City Federal Transfer Center and arrived in the Eastern District of Texas "EDTX"  and arrived on approximately October 8, 2017 (SEE Fannin County Custody Statement EDTX CASE NO. 4:20-CV-126 ECF DOC. 15, page ID # 84-85, Exhibit #13) and was in US Marshal custody in Fannin County Jail in Bonham Texas.

The prisoner was arraigned before US Magistrate Christine A. Nowak and verbally demanded a speedy trial through his appointed counsel Micah Belden at that arraignment.

The prisoner had a subsequent detention hearing before the same magistrate, and despite being accused of a nonviolent offense with no convictions in over 20 years, also no violence whatsoever in the prisoner's background, and the testimony of the prisoner's relative,  Retired Army Sergeant Donnie Nabors vouching for the prisoner's good character and agreeing to be responsible for the prisoner's bond and living arrangements in Tulsa Oklahoma,  less than 3 hours away, the prisoner was denied bond and remanded into custody and detained in Fannin County jail (SEE Fannin County Detention Statement EDTX CASE NO. 4:20-CV-126 ECF DOC. 15 Pg. ID 84-85 Ex. 13).

In May of 2018 after the prisoner had been in the EDTX for more than 180 days for temporary custody, without trial, the prisoner through his appointed counsel Micah Belden filed a speedy trial motion requesting final disposition of all charges. (See Speedy Trial Assertion Case No. 4:17-cr-00177 ECF Doc. 8 Pg ID 46). There was also a change of

venue motion requesting transfer to the Western District of Washington or the Southern District of California, due to the fact that none of the alleged offenses occurred or originated in the 5th circuit and the largest percentage of alleged fraudulent transactions originated in the 9th Circuit in places like Western Washington and California. (See Order Denying Change Venue as Moot Case No. 4 :18-cv-00126 EDTX ECF Doc. No. 1-9 Page ID# 76).

After being in custody in the EDTX for nearly one year, the case was dismissed without prejudice, which caused a violation of IAD Article IV(e) after the prisoner was returned to his original place of imprisonment on an Order of Dismissal which was signed by Judge Amos L. Mazzant. .

The transport back to the original place of imprisonment was without any demand for the prisoner from the original place of imprisonment or by the prisoner. The prisoner was returned to San Diego County California,  George Bailey Detention Centers.  (See Order of Dismissal EDTX CASE NO 4:17-cr-00177 ECF Doc 72).

The prisoner was immediately rushed to trial in San Diego County California due his earlier filing of a speedy trial motion pursuant to CA Penal Code Sections 1381 and 1382. The prisoner pleaded Double Jeopardy before going to trial in California,  due to the fact that the prisoner's federal case was dismissed by the Federal government and his bond was reduced from $1,000,000 to $100,000. (See "Statement of Case" San Diego County California Case No.SCD255517, DA NO. ADY305 "Trial Brief and Motion in " concerning transport to and from federal jurisdictions and the impact on bail and trial. Page #2-5 Exhibit #7).

This reduction in bond was most certainly because there was no pending federal case hanging over the prisoner's head at the time of his return to the state of California as was used to place the prisoner in no bond or Defacto Detainer" by the EDTX. So, it was reasonable to reduce the bond from One Million Dollars to One Hundred Thousand dollars.There was no federal case pending during the State of California trial. The federal investigation that appeared to be ongoing certainly contributed to the Superior court Judge Albert Harutunian and the District Attorney Roy Lai's demand for the high bond amount in November 2015. During the prisoner's arrest and arraignment in California the District Attorney Roy Lai statement indicated that there would be an imminent federal prosecution, which did take place.  However,  the investigation made the No Bail detention primarily a result of unfiled  federal charges, or at a minimum the coordination between federal and state authorities seemed intent to hinder the nonviolent prisoner's defense. (See "Statement of Case" San Diego County California Case No.SCD255517, DA NO. ADY305 "Trial Brief and Motion in  concerning transport to and from federal jurisdictions and the impact on bail and trial. Page #2-5 Exhibit #7).

In or around June 2021,the prisoner obtained a bond and was released from federal custody for a period of 16 months. In that time the prisoner filed an Omnibus Motion to

Dismiss which brought up the issue of Interstate Agreement on Detainers Act and Speedy Trial Act violations—------'-------------------------------------------------------------------------------------

### III LEGAL ARGUMENT:

"The court can correct its own error of transferring the prisoner back to his original place of imprisonment without trial being held. The government's error was particularly blatant after the prisoner requested final disposition of all charges before transfer. A violation of IAD Art. IV(e). Notwithstanding, the Special Provisions in cases when the United States is a receiving State as in this instant;

(1.) Where consideration is given for the seriousness of the offense.

(2.) The facts and circumstances that lead to dismissal

(3.) The impact of reprosecution on the administration of the IAD (4.); And the administration of justice; particularly when there was no court order demanding the prisoner's presence and the prisoner had waived extradition by virtue of the fact of his filing a speedy trial motion". United States v. Mauro, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978).

In addressing these issues in this case in terms of severity of the offense.

(1.) The EDTX prosecution gave the prisoner a plea offer of time served, including credit for time served in California with a range of 36 to 41 months with an 11(c)(1)(c) attached to a plea offer guaranteeing in principle no more time of imprisonment. (See Case No. 4:18-cr-00177 Request to go Before Judge EDTX ECF Doc. 69 page ID# 449); This time-served plea offer can instruct the Court on how serious the government saw the offense at the time of dismissal.

(2.) The fact the government dismissed the case rather than transferred the case, as a transfer was alluded to by Special Agent Stephen Hanley in his subsequent TXSD detention hearing testimony. This dismissal and subsequent reprosecution caused great uncertainty as to how and when the case would be resolved and prejudiced the prisoner with the presumption of guilt in direct violation of IAD, because it ultimately took several years before the government and Agents in TXSD were prepared to bring the prisoner to trial. Not only that, the prisoner suffered trial loss in San Diego County California. (See State of California Probation Report Case No.SCD255517, DA NO. ADY305 Exhibit #7). (See Detention Hearing Transcript ECF CASE NO 4:20-cv-00126 Doc 1-9 page ID# 52-53) & (See Sentence and Judgement in Criminal Case No. 4:18-cr-00710-001 Exhibit #6).

The defendant/prisoner once believed that the case was dismissed because the prisoner requested to go before Judge Amos L. Mazzant to articulate that elements of the offense

did not exist; and he stated, in open court, that the defendant was factually and actually innocent of all charges. And upon discovering the case was dismissed the very day that the defendant went before the Judge, on August 7th 2018 morning calendar, the defendant believed that Judge agreed with him, that he was simply engaged in a 4-Phase Civil Administrative Quiet Title Process that was foreign to the 5th circuit and the State of Texas,  and that agents mistakenly brought charges not understanding the immunities afforded Substitute Trustee in these Quiet Title actions, specifically California Penal Code 2924(b)(d). Where "the Substitute Trustee can incur no liability for his good faith efforts on behalf of the beneficiary (Homeowners) and that any documents filed were privileged communications pursuant to California Penal Code  2924(d)".  But, regardless of whether the Judge agreed with the defendant/prisoner at that time or not, there is a "no return" policy in IAD Article IV(e), to the original place of imprisonment without trial being held. The language literally militates against exceptions and a dismissal with prejudice must be entered into the record. Particularly once the prisoner exercised his speedy trial rights. The case must be dismissed with prejudice after the invocation of the prisoner's speedy trial rights. (SEE Procedural Background Above)

(3.) The reprosecution, after the transfer back to the place of original imprisonment, caused the prisoner to have a California conviction on his record before trial in federal court,  which added to the appearance of culpability, that would not have been there had the prisoner gone to trial in either the EDTX or TXSD before being transported back to his original place of imprisonment where he suffered a loss at trial which added to his criminal history and points, not to mention the extreme delays he suffered in TXSD. (See Federal Sentence and Judgment Sheet Exhibit #6) Judgment in Criminal Case No. 4:18-cr-00710-001 Exhibit #6).

These are all violations of the IAD Art. IV(e) "Anti-shuttling violations and IV(c) 120-day Speedy Trial prescription.
These violations compounded by the transfer back to the original place of imprisonment before trial,  has caused a miscarriage of justice and has denied the prisoner his due process rights and equal justice under law due all citizens under the law.

This transfer of the prisoner back to the prisoner's place of original imprisonment was without any court order or any other demand made to the government for the prisoner's presence, which is essential to any special provisions afforded the United States as the receiving state pursuant to [ 18 USCS Appx 1-9 ].

The government had initially secured the prisoner's immediate presence in the EDTX to stand trial immediately or shortly thereafter on Conspiracy and other charges after refusing reasonable extension to dispose of his current charges in the State of California, which placed the prisoner at a distinct disadvantage.

In the defendant's/prisoner's opinion he was transferred, so the agents on the case could shop for a Judge that would be biased enough to ignore the potential IAD and speedy

10

trial violations and the actual and factual innocence of the accused. And at a minimum the transfer violated the spirit of the IAD Agreement and the constitutional rights to a speedy and fair trial, particularly after the prisoner filed a speedy trial assertion in both California and the EDTX.

IN THE DEPARTMENT OF JUSTICE ARCHIVES STATEMENT:

534. INTERSTATE AGREEMENT ON DETAINERS

Section C: Transfer of Prisoners: "Anti-Shuttling Provisions: Article III(d) and Article IV(e) contain similar provisions that require "If trial is not had on any indictment, information, or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice" unless the United States is the receiving jurisdiction and there has been notice and an opportunity for a hearing under Section 9 of the Agreement. (Article IV(e)) It has been held that "trial" in this context includes sentencing. See Walker v. King, 448 F. Supp. 580 (S.D.N.Y. 1978). The Department has not accepted this decision as a correct interpretation of the Act. Nevertheless, in order to avoid litigation and the risk of invalidating prosecutions, the return of prisoners should be deferred until after the imposition of sentence or a Section 9 hearing. Where, however, dismissal of an indictment is sought on the basis of a prisoner's return prior to sentencing, it should be resisted.

Courts are divided on whether the anti-shuttling provisions of the Agreement are violated by a short duration removal from custody of less than one day which does not interrupt the prisoner's rehabilitation program. United States v. Roy, 830 F.2d 628, 635-636 (7th Cir. 1987); Sassoon v. Stynchcombe, 654 F.2d 371 (5th Cir. 1981). Also, the return of a Federal defendant to a State facility where he/she is to be held under contract as a Federal prisoner may not violate the "anti-shuttling" provisions. See United States v. Sorrell, 562 F.2d 227, 229 n. 3 (en banc), cert. denied, 436 U.S. 949 (1978); United States v. Thompson, 562 F.2d 232, 234 (3rd Cir. 1977) (en banc), cert. denied, 436 U.S. 949 (1978).

However, in view of the severe sanction imposed for violation of the anti-shuttling provisions, extreme caution should be exercised before deviating in any way whatsoever from the strict dictates of Article IV(e) and Section 9 of the Agreement.

The protection of the Agreement's "anti-shuttling" provisions may be waived by the defendant's request for a retransfer prior to disposition of the outstanding charges. Articles III(d) and IV(e). See Webb v. Keohane, 804 F.2d 413 (7th Cir. 1986); United States v. Scallion, 548 F.2d 1168, 1170 (5th Cir.), cert. denied, 436 U.S. 943 (1978). As these rights are not guaranteed by the Constitution to preserve a fair criminal trial, there is no requirement that such a waiver be "knowingly and intelligently made." See United States v. Black, 609 F.2d 1330, 1334 (9th Cir. 1979), cert. denied, 449 U.S. 847 (1980); United States v. Eaddy, 595 F.2d 341, 344 (6th Cir. 1979). Upon like reasoning, it is generally held

that the rights will be waived or forfeited through "procedural default" by failure to make timely objection in the trial court so that violations cannot be complained of for the first time on appeal, id. at 346, Scallion, supra, at 1174, or in collateral proceedings under 28 U.S.C. 2255, Greathouse v. United States, 655 F.2d 1032, 1034 (10th Cir. 1981), cert. denied, 455 U.S. 926 (1982), or under 28 U.S.C. 2254, Fasano v. Hall, 615 F.2d 555 (1st Cir.), cert. denied, 449 U.S. 867 (1980); Bush v. Muncy, 659 F.2d 402 (4th Cir. 1981), cert. denied , 455 U.S. 910 (1982). See, however, Cody v. Morris, 623 F.2d 101 (9th Cir. 1980). Because violation of the Agreement is not a "jurisdictional" defect, an unconditional plea of guilty forecloses direct appeal and collateral review of alleged violations. See United States v. Palmer, 574 F.2d 164 (3rd Cir.), cert. denied, 437 U.S. 907 (1978); United States v. Hach, 615 F.2d 1203, 1204 (8th Cir.), cert. denied, 446 U.S. 912 (1980)."

Section D: Time Limitations: Article "IV(c) provides that, subject to continuances granted for good cause in open court in the presence of the prisoner or his/her attorney, "trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving [S]tate," otherwise the indictment shall be dismissed with prejudice. (Article V(c)) "(D)elay that is lawful under the Speedy Trial Act generally will comply with the mandate of the Detainer Act." See United States v. Odom, 674 F.2d 228, 231 (4th Cir.), cert. denied, 457 U.S. 1125 (1982). See also Article III(a) (trial must commence within 180 days of receipt by prosecuting State of prisoner's request for final disposition of charges underlying detainer)."

There were no continuance hearings with the prisoner present that extended the 120-day time limit for taking the prisoner to trial.

In the indictment of the prisoner, in the EDTX, there were no properties or alleged victims located in the 5th circuit or anywhere in the state of Texas.  Nor did any of the business conduct originate anywhere in the 5th circuit. But the prisoner was demanded by the prosecutors and agents in the EDTX insisting on the prisoner's immediate presence in EDTX to stand trial on the same business conduct and properties being tried in California state court, yet right before trial was scheduled to begin in California,  and after the prisoner rejected a time-served plea, and refused to give a statement agreeing that prisoner knowingly and intentionally defrauded individuals, all of sudden, the government urgently needed the prisoner in EDTX. This was suspect because during several pretrial hearings, in California,  the District Attorney Roy Lai indicated that the federal agents were still investigating the prisoner and federal charges were imminent. Yet the delay essentially gave the prosecution time to dissuade defense witnesses from testifying on behalf of the prisoner in both California, TXSD and the EDTX.

After bringing the prisoner to the EDTX, the government failed to bring the prisoner to trial within the prescribed time period pursuant to IAD and the STA, so after disrupting the prisoner's California trial, rehabilitation and health treatments in California, the agents on the case were deliberately indifferent to the speedy trial rights and health needs of the prisoner while in California and EDTX.

The prisoner specifically contends as a result of initial removal from San Diego, the scheduled kidney Dialysis was discontinued. None of the scheduled treatments occurred in California, or in EDTX or in TXSD.

It's as if the government was trying to precipitate the untimely demise of the prisoner, or cause his death altogether, instead of trying the prisoner in accordance with the 120-day time limit prescribed by IAD Article IV(e) and after the prisoner made his speedy trial assertion, the 180-day period. The charges were dismissed without prejudice. Years passed before the prisoner was brought to trial in the TXSD. And the medical treatment is still lacking.

In addition to denying the prisoner speedy trial rights and the protection against anti-shuttling provisions of the IAD. Upon sentencing only received 1 year and 3 months jail credit although the prisoner had spent over 3 years and 10 months in federal custody.(See TXSD Case No. 4:18-cr-00710 Sentencing Memorandum Page #2-7 Exhibit #10).

## CAUSE AND PREJUDICE

In Murray v. Carrier, 477 U.S. 478 (1986): "This Supreme Court case established the "cause and prejudice" standard for overcoming procedural default. It held that if a petitioner can demonstrate "cause" for the default (i.e., a legitimate reason for the failure to comply with the procedural requirements) and "prejudice" resulting from the alleged constitutional violation, the court may consider the merits of the petitioner's claims. While this case primarily addresses procedural default, it could also support an argument for modifying a dismissal order if the prisoner can show cause and prejudice for the dismissal."

The prisoner seeks to prove cause and prejudice due to a procedural default which occurred as a result of the dismissal without prejudice and his return to the original place of imprisonment before trial and after his speedy trial assertion; by demonstrating cause and prejudice:

1. **Cause**: The prisoner needs to show that there was a legitimate reason or cause for the procedural default. This could include factors like ineffective assistance of counsel, interference with legal mail, or some external circumstances that prevented them from following proper procedures.

In this instant case the government agents were Judge shopping and though none of the Judge's in Southern District of California or Western District of Washington wanted the case, which is where the prisoner had originated the alleged offenses. None of those judges wanted the case due to the difficulty of locating a jury pool that would be

sympathetic to the government's position that the Statutory Construction of Title 15 USCS 1635(b) didn't allow a homeowner to save their homes from foreclosure, and provides an exception to the criminal statute of Conspiracy to commit wire fraud, wire fraud and money laundering. Those Districts would have understood that the prisoner was simply engaging in a normal 4-Phase Civil Administrative Quiet Title Process that is usual and customary to non judicial foreclosures in jurisdictions such as California and Western Washington and not to Texas or the 5th circuit.

2. **Prejudice**: The prisoner must establish that the procedural default actually resulted in prejudice, meaning it affected the outcome of the case. They need to show that had the procedural default not occurred, there is a reasonable probability that the result would have been different, such as a different verdict or sentence.

Once the prisoner was returned back to the place of his original imprisonment without trial being held, the trial in California, which was the original place of imprisonment took place within 30 days of the prisoner's arrival back in San Diego County none of the defense documents had arrived yet from the EDTX and the prisoner went to trial after only spending 3 hours with defense counsel and without defense documents. An Agreement to a continuance would have waived the defendant's rights to a speedy trial pursuant to CA Penal Code 1382. However, despite having no defense documents and only a minimal time with defense counsel, less than 4 hours total, the jury still deliberated 4 days before finding the prisoner guilty.

Had California failed to bring the prisoner to trial within the 30 days, after the prisoner invoked his speedy trial rights, the prisoner may have legal grounds for speedy trial violations against his case in California and conversely, had the prisoner waited for the defense documents to arrive back in California, the prisoner would have waived his speedy trial rights for another unforeseen period of delays. And the prisoner would have lost his claim of a speedy trial violation.

"The Interstate Agreement on Detainers Act does not go to the power of the court to try a case but, rather, it deals with the power of prosecution to proceed against a person who was charged with a criminal offense", <u>United States v. Paige</u>, 332 F. Supp. 2d 467 (D.RI. 2004).

1.-Purpose

"The purpose of the Interstate Agreement on Detainers (18 USCS App) is to encourage expeditious disposition of charges outstanding against prisoner and to provide cooperative procedures among member states to facilitate such disposition, charges outstanding against prisoners producing uncertainties that obstruct programs of prisoner treatment and rehabilitation." <u>United States v. Mauro</u>, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978), (not followed by <u>United States v Wiliams</u> (CA3 Pa) 615 F.2d 585, on remand (WD Pa) 502 F Supp 721 as stated in Cooney v Fulcomer (CA3) 1989 US

App LEXIS 13950); <u>United States v. Palmer</u>, 574 F.2d 164 (3d Cir.), cert. denied, 437 U.S. 907, 98 S. Ct. 3097, 57 L. Ed. 2d 1138 (1978); <u>Stroble v. Anderson</u>, 587 F.2d 830 (6th Cir. 1978), cert. denied, 440 U.S. 940, 99 S. Ct. 1289, 59 L. Ed. 2d 499 (1979) ; <u>United States v. Gallipoli</u>, 599 F.2d 100 (5th Cir.), reh'g denied, 605 F.2d 554 (5th Cir. 1979); <u>Gale v. United States</u>, 391 A.2d 230 (D.C. 1978), cert. denied, 439 U.S. 1133, 99 S. Ct. 1057, 59 L. Ed. 2d 96 (1979). (SEE Arrest Warrant EDTX CASE NO. 4:20-CV-126 ECF DOC. 5 EX 3).

There has been nothing expeditious about any of the proceedings in these matters from the initial arrest in November 2015, through the time spent in the EDTX up to the ultimate conviction in TXSD, to this very date.

"The main purpose of Interstate Agreement on Detainers, 18 USCS Appx, is to provide means for expeditious resolution of all outstanding charges which may affect conditions or duration of imprisonment and treatment. " <u>United States v. Cyphers</u>, 556 F.2d 630 (2d Cir. 1977), cert. denied, 431 U.S. 972, 97 S. Ct. 2937, 53 L. Ed. 2d 1070 (1977) cert denied, 436 US. 950, 98 S. Ct. 2858, 56 L, Ed. 2 792 (1978).

The prisoner in this (SEE Motion Hardship Credit for Hard Time Served Addendum SDTX CASE NO. 4:18-CR-00710 ECF DOC. 186 Pg ID# 6 of 8 and 7 of 8).(See BOP Computation 1 year 8 Months Jail Time Credit Exhibit #3).

The prisoner experienced the opposite of the intention of IAD of having an expeditious resolution to all outstanding charges. The lack of adherence to the IAD Agreement and the prisoner's speedy trial rights lead to extreme continuances and although the prisoner was in actual Federal custody for 4 years and 3 months not including the out custody bond period,  the prisoner only received 1 year 3 months jail credit upon his arrival in federal prison in March 2023. The 8 Months the prisoner spent in EDTX and the 3 months transport back to the original place of imprisonment was not even credited to the prisoner's jail time credit. This is a total miscarriage of justice. (See BOP Computation 1 year 3 Months Jail Time Credit Exhibit #3).

Prisoner's TXSD counsel David Natchigall would not entertain filing a speedy trial motion, and he ultimately abandoned his defense duties, causing the prisoner to defend himself at trial which is why the prisoner is seeking sanctions against TXSD counsel.

In this case, the dismissal without prejudice caused the exact opposite of the intent the IAD and STA were created to resolve. The prisoner incurred total uncertainty as to when he could dispose of the federal charges and the prisoner suffered 16 or more transfers before trial in the United States finally occurred, yet the prisoner has received no medical treatment after the dismissal without prejudice.  (SEE Motion Hardship Credit for Hardtime Served SDTX CASE NO. 4:18-CR-00710 ECF DOC. 186 Pg ID# 6 of 8 and 7 of 8) and (SEE Motion To Transfers Venue Denied as Moot EDTX CASE NO. 4:17-cr-00177 ECF DOC. 73 Pg ID #458).

**2.-Assurance of speedy trial**

"Interstate Agreement on Detainers Act is comprehensive statute which is to handle 2 major problems facing prisoner against whom detainer representing open criminal charges in another jurisdiction is lodged: (1) uncertainties produced by detainers and difficulty in securing rapid disposition of them which obstruct programs of prisoner treatment and rehabilitation and (2) right to speedy trial; to implement these rights, Agreement creates several rights previously non-existent. United States ex rel. " Esola v. Groomes, 520 F.2d 830 (3d Cir. 1975).

Not only was the prisoner programming in California but he was receiving critical medical treatment that was discontinued due to the removal and reprosecution. (See Dialysis medical documentation George Bailey Detention Centers Exhibit #1).

"The purpose of provisions of Interstate Agreement on Detainers Act, which provide assurances to prisoners that he will have a speedy trial, are necessary to prevent prosecutors from avoiding limitations merely by arranging prisoners without any attempts to bring to speedy trial." United States v. Ford, 550 F.2d 732 (2d Cir. 1977), affd, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978).

The prisoner in this case was not provided with any of provisions of the IAD or STA. The prisoner was being treated as someone who was kidnapped and bullied; As someone who dared not expect justice from asserting his or her rights to any of the laws of the land.

Another "Purpose of Interstate Agreement on Detainers Act is to obtain speedy disposition of outstanding charges: its purpose is to remedy situation where 2 jurisdictions have charges outstanding against single person, and since a second jurisdiction often has to wait for person's released from custody of first jurisdiction to try him in a second trial takes place many years later." United States v. Cappucci, 342 F. Supp. 790 (E.D. Pa. 1972) ; People v. Squitieri, 91 Misc. 2d 290, 397 N.Y.S.2d 888 (N.Y. Sup. Ct. 1977).

As mentioned earlier, there was no attempt to allow the prisoner to speedily dispose of these federal charges. And once the prisoner was returned back to the place of his original imprisonment in San Diego County California he was faced with the choice of going to trial without his defense documents or waiving his speedy rights and waiting another 6 months to one year before making it back on the trial calendar. Yet, with no defense documents and only 3 hours of time spent with the defense counsel, it still took the jury 4 and a half days, with the 2 rereads of Special Agents Hanleys testimony, suggesting that the prisoner had admitted to guilt, which the prisoner did not, to get a conviction.

**3.-Elimination of abuses**

16

"Interstate Agreement on Detainers Act attempts to remedy disadvantages and hardships imposed upon prisoners attendant with use of detainers and to eliminate potential abuses of detainer system; accordingly, Agreement encourages expeditious disposition of outstanding charges by providing prisoner with method of clearing detainers and charges outstanding against him and further provides cooperative proceedings governing temporary transfers of prisoners for purposes of trial on outstanding charges among participating jurisdictions to aid such disposition." United States v. Dixon, 592 F.2d 329 (6th Cir.), cert. denied, 441U.S. 951, 99 S. Ct. 2179, 60 L. Ed. 2d 1056 (1979).

In this prisoner's case, he was brought to EDTX on detainer and demanded a speedy trial and trial did not occur within the prescribed time period, which make the treatment that the prisoner experienced in this instant case a direct violation of the IAD and the STA which created the very definition of a disadvantaged and hardship on the prisoner with no attempt by the government to initially or ultimately dispose of the case in an expeditious manner, but just the opposite occurred, even after the prisoner spent nearly 4 years in federal custody he only received 1 year and 8 months jail credit which is an abuse of the prisoner's constitutional rights and violates IAD's provisions with no regard for the prisoner's liberty interest or health. The impact of their reprosecution of the prisoner was devastating. The presumption of guilt alone was sufficient to prejudice the prisoner's chances at winning at trial.  (SEE Motion Hardship Credit for Hardtime Served SDTX CASE NO. 4:18-CR-00710 ECF DOC. 186 Pg ID# 6 of 8 and 7 of 8). (See BOP 1 year 8 Months Computation of Federal Jail Time Credit Exhibit #3).

The "Interstate Agreement on Detainers Act was designed to establish uniform process for transporting prisoners for trial from jurisdiction in which they are serving sentence to jurisdiction in which they have been charged with offense; primary purpose was to eliminate abuses, such as delay in bringing prisoners to trial and interference with rehabilitation programs, which characterized use of "detainers" previous to adoption of Act. " United States v. Cogdell, 585 F.2d 1130, 190U.S. App. D.C. 185 (D.C. Cir. 1978), rev'd, 444 U.S. 394, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980).

The prisoner arrived in the EDTX on a Writ of Habeas Corpus Ad Prosequendum and arrest warrant.  The prisoner was appointed counsel and arraigned and pleaded not guilty to federal charges,  the charges were dismissed without prejudice and the prisoner was transported back to San Diego the place of his original imprisonment without trial being held in the EDTX. After suffering a conviction in California, the prisoner was returned to the United States SDTX as if it was a jurisdiction transfer within the United States, which is a violation of IAD Article IV(e) and STA.

4.-Elimination of uncertainty and  interruption of rehabilitation

"It was clearly the intent of Congress, in enacting Interstate Agreement on Detainers, to afford prisoner against whom detainer had been lodged procedure for testing its

substantiality, and prisoner could then gain greater degree of certainty about his future and prison authorities would be able to plan more effectively for his rehabilitation and return to society. " <u>United States v. Harris</u>, 566 F.2d 610 (8th Cir. 1977).

The delay in bringing the prisoner to trial caused a delay in the rehabilitation process and prevented the prisoner from earning various Jail Time Credit, such as Second Chance Act points and First Act Points due , the loss of which occurred all due to the delay in trying the prisoner before transporting him back to the original place of imprisonment. (See BOP 1 year 8 Months Computation of Federal Jail Time Credit Exhibit #3). And (See TXSD Case No. 4:18-cr-00710 "Sentencing Memorandum" Showing 3.5 years in federal custody and 6 years in total custody Page #2-7 Exhibit #10).

The prosecution in this case did the exact opposite of providing the prisoner with any degree of certainty, it created uncertainties all along the way, suggesting that there are no rules of law that apply to this prisoner whatsoever.

"The Fundamental purpose of Interstate Agreement on Detainers Act is to encourage minimum interruption in rehabilitation programs at place of "original imprisonment" and to avoid harassment by uncoordinated shuttling of prisoners back and forth between custodial states and other states in which multiple related charges may be pending. " <u>United States v. Bryant</u>, 612 F.2d 806 (4th Cir. 1979), cert. denied, 446 U.S. 920, 100 S. Ct. 1855, 64 L. Ed. 2d 274 (1980).

All these are multiple charges are related In the State of California and Federal government in this case, it appears that there was either intentional or unintentional shuttling, but whichever it was, it disadvantaged the prisoner in the disposition of charges in both the sending and receiving state. First by removing the prisoner from San Diego County California, under the auspices that the prisoner's immediate presence was required in order for him to stand trial in the United States, and then bringing him to the United States jurisdiction and dismissing the case without prejudice and returning the prisoner back to the place of his original imprisonment without trial being held, is a clear violation of IAD Article IV (e).

The process caused prisoner an extended period of rehabilitation, due the transport of prisoner back to the place of his original imprisonment his rehabilitation period was extended, although the prisoner spent nearly 4 and a half years in federal custody before going to trial, the prisoner only accrued 1 year and 3 months upon arrival in prison. (See BOP 1 year 3 Months Computation of Federal Jail Time Credit Exhibit #3). And (See TXSD Case No. 4:18-cr-00710 "Sentencing Memorandum" Showing 3.5 years in federal custody and 6 years in total custody Page #2-7 Exhibit #10).

"Purpose of 18 USCS Appx, Interstate Agreement on Detainers, is to establish uniform procedures for securing presence of prisoners confined in other jurisdictions and to

lessen uncertainty for prisoners resulting from pending charges". <u>Adams v. United States</u>, 423 F. Supp. 578 (E.D.N.Y. 1976), affd, 559 F.2d 1202 (2d Cir. 1977).

The excessive transport process created in this case caused maximum uncertainty of when the prisoner would be tried and what defense would be available. The prisoner commented that he felt "kidnapped and bullied."

"IAD was enacted for the specific and limited purpose of minimizing interference with prisoner's treatment and rehabilitation; detainer lodged against prisoner that can adversely affect the prisoner's treatment and rehabilitation only upon his entry into the assigned facility." <u>Lublin v. Johnson</u>, 628 F. Supp. 1496 (E.D.N.Y. 1986).

The prisoner has never had any staff explain, in response to his question, why wouldn't either the EDTX or TXSD provide kidney treatment. Nor why the prisoner was not given jail credit for the time the prisoner spent in federal custody.

The process and treatment the prisoner endured in this case neither allowed for his rehabilitation or allowed him his needed medical treatment, that would provide for his entry into an assigned facility or reentry to society.

5.-Relationship with speedy trial requirements

"Subsequent enactment of Speedy Trial Act (18 USCS §§ 3161 et seq.) is not inconsistent with United States' status as receiving state under Agreement, since in situations where 2 different sets of time limitations are prescribed, more stringent limitations may simply be applied." <u>United States v. Mauro</u>, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978).

The government not only violated the prisoner's speedy trial rights in the United States, but they ignored the tenets of IAD.

"Prosecuting authority is not relieved of its obligation under Sixth Amendment to provide prisoner speedy trial just because he is in custody elsewhere." <u>United States v. Mauro</u>, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978).

If the government demanded the prisoner's immediate presence from San Diego County California when he first came to the EDTX, they could have demanded the prisoner back from California and ensured that he went to trial within the 120-day time limit in EDTX or TXSD.

"While Interstate Agreement on Detainers Act places no duty upon state, or United States, to bring prisoner to trial absent demand by him, it does provide procedure whereby a state may have prisoner transferred to custody if it so chooses; however, the fact that the prisoner is incarcerated in another jurisdiction does not relieve the

government from providing speedy  under the Sixth Amendment." <u>United States v  Dowl</u>, **394 F. SUPP. 1250 (D. MINN. 1975).**

The proceedings in this case, from the beginning, provides for a textbook circumvention lesson to all prosecuting authority on how to deny Sixth Amendment speedy trial rights and how to circumvent the Interstate Agreement on Detainers by simply shuttling and ignoring demands for final disposition of all charges. And by treating the separate jurisdictions within the United States as a different sending and receiving jurisdiction or states, the prisoner in this instant matter has suffered a gross miscarriage of justice.

"Claimed violations of Speedy Trial Act are especially analogous to claimed violations of Interstate Agreement on Detainers Act's "anti-shuttling' provision, 18 USCS app. 2, § 2, art. IV(e), because both statutes call for dismissal of charges against the prisoner if the prisoner is not tried within the prescribed time period". <u>United States v. Paige</u>, 332 F. Supp. 2d 467 (D.R.I. 2004).

The prisoner in this case demanded a speedy trial in EDTX which triggered the IAD 180-day rule and 120-day time limit to be tried. And because neither time limit was met the prisoner is entitled to a dismissal with prejudice.

5.-Relationship with speedy trial requirements

"Subsequent enactment of Speedy Trial Act (18 USCS §§ 3161 et seq.) is not inconsistent with United States' status as receiving state under Agreement, since in situations where 2 different sets of time limitations are prescribed, more stringent limitation may simply be applied." <u>United States v. Mauro</u>, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978). "Prosecuting authority is not relieved of its obligation under Sixth Amendment to provide the prisoner a speedy trial just because he is in custody elsewhere." <u>United States v. Mauro</u>, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978).

The fundamental defect that caused a miscarriage of justice typically refers to a serious error or flaw in the legal process that results in a conviction which is what causes an unjust outcome, such as a wrongful conviction or an unfair trial. In the context of speedy trial violations, these involve delays in bringing a case to trial that harmed the prisoner's rights. This is exactly what occurred in this instant matter.  By shuttling the prisoner in a d out of the United States custody and sending him back to the original place of his imprisonment without his business records and placing him in a trial situation with no business and financial records, not to mention having only 3 hours with his trial attorney before trial, placed the prisoner at an extreme disadvantage.

### BARKER FACTORS

For violations of the Speedy Trial Act, the Barker factors are a set of four criteria used to determine whether presumed prejudice has occurred due to the violation. They are: In

20

the context of the Sixth Amendment's guarantee of a speedy trial, the United States Supreme Court established a four-factor test in Barker v. Wingo (1972) to determine whether a prisoner's right to a speedy trial has been violated. These factors are:

1. **Length of Delay**: The longer the delay between arrest and trial, the more likely it is to prejudice the prisoner.

In this case the prisoner was arrested by the state of California San Diego County and charged in November 2015 with a grand theft identity fraud filing false instrument and other charges with a Million dollar bond placed against him due to the federal government's imminent prosecution. But only went to trial in the United States in September 2022, a full 7 years later. The defendant did move for dismissal.---------,

The prisoner was arrested by US Marshals on behalf of the EDTX in October 2017, the prisoner remained in custody and filed a speedy trial motion in May 2018. The charges were dismissed without prejudice by the United States in EDTX and the prisoner sent back to the place of his original imprisonment without trial being held in the United States until September 2022. All due to the initial dismissal without prejudice order.

When the prisoner challenged the One Million dollar bond in San Diego County, by challenging the District Attorney's assertion of imminent federal charges. The request to lower the One Million dollar Bail amount was denied. The District Attorney objected to lowering the bond by telling the court that there was a certainty that the government would prosecute. The prisoner appointed counsel stated that there was no proof that the federal government was going to charge the prisoner,  the Superior court Judge Albert Harutunian was satisfied with the DA's idea that the federal government would prosecute, thus denying bail reduction. This collaboration between  State and Federal acted as DE FACTO DETAINER; But later after the return of the prisoner to San Diego after the EDTX dismissal without prejudice without trial being held, the San Diego County bail was reduced to $100,000. Essentially, the prisoner had been on federal hold since the first day of arrest in November 2015,  as evidenced during arraignment and subsequent bail hearings and the ($900,000) Nine Hundred Thousand dollar Bail reduction in San Diego.

2. **Reason for Delay**: Delays caused by the prosecution are more likely to prejudice the prisoner than those caused by the defense or court.

In this case the delays were all caused by the prosecution, particularly when they sent the prisoner back to the prisoner's place of original imprisonment, after interrupting the prisoner's state trial a year earlier in San Diego. The 5th circuit has generally considered a delay greater than 1 year after arrival in the receiving state as presumed prejudice against the prisoner, when the government is responsible for the delay. The prisoner was 54 years of age when first arrested and he went to trial at age 61. He was certainly disadvantaged by some loss of faculties or memory,  not to mention  the loss of

witnesses and business and defense documents. It would not be unreasonable to expect that such a lengthy delay due to the government's put the prisoner at a distinct disadvantage.

3. **Assertion of Right**: If the prisoner actively and promptly asserts their right to a speedy trial, this factor weighs in their favor.

A Speedy Trial Assertion was made in May 2018 in the EDTX. (SEE Speedy Trial Assertion EDTX CASE NO. 4:17-cr-00177 ECF DOC. 62  Pg ID #429).

4. **Prejudice**: The prisoner must show that the delay actually harmed their ability to mount a defense, which might include faded memories or lost evidence.

The protracted delays and the shuttling back and forth from the United States with the use of private prison operators like GEO, that don't allow for transporting prisoners' legal documents, was absolutely a handicap to the prisoner's defense. The lengthy delays due to the government and appointed counsel abandonment cause the prisoner irreparable harm. (See GEO Refusal to transport acknowledgement Exhibit #5).

The prisoner can not reference the following case law, 'but the 5th circuit has generally considered a one year period to be the point where a prisoner is presumed guilty or prejudiced. The prisoner's San Diego County defense counsel found it suspicious that the federal government chose to interrupt the prisoner's California trial and Dialysis treatment to appear in the EDTX immediately, when the DA Roy Lai was in constant contact with federal authorities the entire time the prisoner was awaiting trial in California. The delay caused the loss of 22 of the 27 favorable defense witnesses that were lost to defense due to subsequent interviews by the FBI Special Agents and the lost of critical financial records due the transport of the prisoner by private prison operators at GEO.(GEO refusal to transport legal paperwork Exhibit #5).

Specifically the loss of the prisoner's financial records prevented the prisoner from addressing a critical attack against his intentions , which was a critical element of his defense, while operating his business, this was a trial issue that could have easily been overcome or mitigated the offense if the prisoner would have been allowed by GEO to transport his business records.

Many witnesses that agreed to testify on behalf of the defense believed the prisoner may actually be guilty due to the fact that the prisoner was abruptly taken into federal custody. Then the agents were able to essentially threaten the witnesses one by one against support of the prisoner. The threat occurred  by the Special Agents simply telling them that the prisoner committed fraud, all before fraud was to be proven during trial; and they told some of the prisoner's witnesses that "The law: Title 15 USCS 1635(b) doesn't even apply to residential mortgage loan transactions." This is patently untrue; it

does apply to Re-organization or Refinance residential mortgage loan transactions. These and other matters caused the prisoner to suffer prejudice.

6.-Applicability

"The 180-day time period in Article III(a) for bringing prisoner to trial does not commence until the prisoner's request for final disposition of charges against him has actually been delivered to court and the prosecuting officer of jurisdiction that lodged the detainer against him."  Fex v. Michigan, 507 U.S. 43, 113 S. Ct. 1085, 122 L. Ed. 2d 406, 7 Fla. L. Weekly Fed. S 10, 93 Cal. Daily Op. Service 1214 (1993).

The EDTX Court received the prisoner's Speedy Trial Assertion in May 2018 he was not taken to trial until September 20th 2022 nearly 4 years later.  (See "Federal Sentence and Judgment Sheet" TXSD Case No. 4:18-cr-00710 Exhibit #6).

After the United States EDTX requested temporary custody of the prisoner and he arrived in the EDTX in October 2017. The prisoner in this case was neither taken to trial within the 120-day time period of arriving in the receiving state pursuant to IAD Art IV or 180-day time limit prescribed after demanding final disposition of all charges pursuant to Speedy Trial Act (18 USCS §§ 3161 et seq.)

"Interstate Agreement on Detainers did not apply to writ of habeas corpus ad prosequendum  by government, where prisoner had not begun term of imprisonment and did not allege that he was involved in rehabilitation program." United States v. Castor, 937 F.2d 293, 33 Fed. R. Evid. Serv. (CBC) 158 (7th Cir. 1991) .

The prisoner had earned 6 years of custody credits due to his rehabilitation programming.  (See Defendant's  "Statement in Mitigation and Sentencing Memorandum" San Diego Superior Court California Case No. SCD255517 DA No. ADY305 Exhibit #9).

In this instant case the prisoner file a speedy trial assertion and does allege he was actively engaged in rehabilitation during his 2 year incarceration in the high security facility at George Bailey Detention Centers in San Diego County California, the prisoner was engaged in and completed all the requisite prisoner rehabilitation class work and case management requirements to qualify for two days served for every actual one day imprisoned. (See State of California Probation Report Case No.SCD255517, DA NO. ADY305 Exhibit #7). The prisoner completed food handling certification and restaurant management course studies (A One Year Course), as well taught GED classes in order to assist his fellow inmates to obtain their GED while earning program credits for himself. He completed the TABE Testing exercises.

The inmate was also engaged in Pre-Dialysis treatment and emergency dental treatment and other medical care that was discontinued due to the excessive transfers to and  from the United States. (SEE Motion Hardship Credit for Hardtime Served SDTX CASE NO.

**4:18-CR-00710 ECF DOC. 186 Pg ID# 6 of 8 and 7 of 8). The detainer triggered the application of IAD.**

**"Explanation of the county sheriff's deputy that the state narcotics officer placed "federal hold" on the plaintiff arrestee to assure that plaintiff would be available to be interviewed by federal agents did not justify detention without bail, where the federal government had not charged plaintiff with anything and no federal**
the detainer existed" . Hart v. O'Brien, **127 F.3d 424, 47 Fed. R. Evid. Serv. (CBC) 1447 (5th Cir. 1997), reh'g, en banc, denied, 154 F.3d 419 (5th Cir. 1998), cert. denied, 525 U.S. 1103, 119 S. Ct. 868, 142 L. Ed. 2d 770 (1999).**

- **In this instant case, the San Diego County district attorney used imminent federal prosecution as the explanation for setting bond at 1 million dollars, which was due to the federal government's eminent charges against the prisoner? Therefore his one million dollar bond, which essentially amounted to a no bond situation was as a result of special agent Ruben Hernandez of the Las Vegas field office and special agent Rodney Connor and Stephen Hanley of the Dallas area FBI field office communication with the San Diego County DA Roy Lai, who justified bail of one million dollars due to the prisoner's imminent charges from the federal government. This placed the prisoner in the highest security level at George Bailey Detention Centers and although the allegations against the prisoner were of a nonviolent nature,  the prisoner suffered exposure to the violent criminals in all of California,  because less than 1% of the accused have bail set at $1 Million or above. Despite all the prisoner has been through as a result of the conviction he was immediately placed in an out-custody Camp at FCI Sheridan Satellite camp where 93% of the inmates self surrender due to their nonviolent backgrounds such as the prisoner's this case background. So the prisoner was harshly treated to induce a plea of guilty. When the prisoner was returned to San Diego County California without trial being held in EDTX.  The bail was immediately lowered to $100,000 after the prisoner was returned to the State of California,  county of San Diego without being tried by the United States and the prisoner pleaded "Once In Jeopardy" asking the Court to dismiss charges due to the fact the federal government had dismissed the case involving the identical business conduct and properties. Without the looming federal charges, a more appropriate bail would have been set, leaving no doubt there was a nexus of the bail amount and pending federal charges and communication between the State and federal prosecutors. Causing a "Defacto Detainer" by the government without actually placing a Writ or other forms  of detainer on the prisoner at that time. They were in fact waiting to determine whether or not enough pressure had been applied to induce a plea. A plea is the only way a statutory construction argument could be overcome on Appeal. (SEE California case motion ONCE IN JEOPARDY CASE NO. 4:20-cv-00126 ECF DOC. 6 Pg ID #29-39). And (See Defendant  "Statement in Mitigation and Sentencing Memorandum" Page #2-3 For Bail Reduction in San Diego Superior Court California Case No. SCD255517 DA No. ADY305 Exhibit #9).**

**7.-Construction**

**"Interstate Agreement on Detainers (18 USCS Appendix), which establishes procedures by which one jurisdiction may obtain temporary Custody of prisoner incarcerated in another jurisdiction for purpose of bringing that prisoner to trial, is Congressionally sanctioned by Crime Control Consent Act (48 Stat 909) as interstate compact within compact clause of United States Constitution Article 1, § 10, Clause 3 and is  Federal law subject to federal rather than state construction. Cuyler v. Adams," 449 U.S. 433, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981).**

**A Writ of Habeas Corpus Ad Prosequendum was filled and an arrest warrant was executed which caused the prisoner's presence in EDTX. The prisoner was appointed counsel and arraigned and pleaded not guilty. The charges were dismissed without prejudice and the prisoner was returned to San Diego County California,  the place of his original imprisonment violating the Interstate Agreement on Detainers and the STA.**

**"Interstate Agreement on Detainers Act(IAD) must be strictly interpreted and applied; even brief interruption in confinement without trial in requesting state violates IAD's "anti-shuttling" provision, 18 USCS app. 2, § 2, art. IV(e)." United States v. Paige, 332 F. Supp. 2d 467 (D.R.I. 2004).**

**The prisoner was brought to the EDTX,  arraigned and remanded into custody and after spending 9 months in the EDTX,  the charges were subsequently dismissed without prejudice and the prisoner was returned back to the place of his original imprisonment without trial being held.**

**"In applying provisions of 18 USCS App Art IV, the court is guided by the rule that interstate agreement on detainers is legislation remedial in character and should be construed liberally in favor of prisoners." Commonwealth v. Merlo, 242 Pa. Super. 517, 364 A.2d 391 (Pa. Super. Ct. 1976).**

**In applying provisions of 18 USCS App Art IV, the government seems to have ignored the Agreement altogether. They have treated the shuttling back and forth between states as merely a transfer within the jurisdiction of the United States**

## IV. PREREQUISITES TO INITIATION OF PROCEEDINGS

**8.-Participating states**

**"Transfer of prisoner can be accomplished through Interstate Agreement on Detainers Act only if both sending jurisdiction and demanding state are both parties to the Agreement. United States ex rel." Esola v. Groomes, 520 F.2d 830 (3d Cir. 1975).**

Both the United States and California are parties to the IAD Compact Agreement.

"Interstate Agreement on Detainers, enacted into law in 1970 on behalf of the United States, had already been adopted by 28 states and since then by all remaining states with exception of Alabama, Alaska, Mississippi, and Oklahoma." United States v. Mauro, 544 F.2d 588 (2d Cir. 1976), rev'd, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978).

"The Interstate Agreement on Detainers Act is binding on the United States and those states which have adopted it." United States v. Cappucci, 342 F. Supp. 790 (E.D. Pa. 1972). "The fact that the state in which the prisoner was held in federal custody was not party to Interstate Agreement on Detainers Act during the time he was in custody was of no significance since demanding states as well as the United States were parties to the Act." Young v. Mabry, 471 F. Supp. 553 (E.D. Ark. 1978), aff'd, 596 F.2d 339 (8th Cir. 1979).

There is no doubt that the United States is a party to the IAD.

9. - United States

"Under Interstate Agreement on Detainers Act (18 USCS App) by which the United States joined as a party to Interstate Agreement on Detainers, the United States is party to Agreement as both "sending" and "receiving" state, not just as "sending" state." United States v. Mauro, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978).

"Interstate Agreement on Detainers was enacted by Congress on behalf of the United States in 1970, and the United States is a "state" for purposes of the Act, under 18 USCS Appx, Interstate Agreement on Detainers § 2, Article II(a)." United States v. Harris, 566 F.2d 610 (8th Cir. 1977) ; United States v. Sorrell, 413 F. Supp. 138 (E.D. Pa. 1976), affd, 562 F.2d 227 (3d Cir. 1977).

"While on its face Interstate Agreement on Detainers Act could be read to define entire United States as single receiving "state", act must be interpreted to take into account circumstances of its enactment and any probably unforeseen change of legal circumstances bearing on its application; as originally drafted for application among several states, Act must have contemplated separate geographic and distinct jurisdictional unit when it used term "state": to consider whole of United States as receiving "state" would be to violate fundamental purpose of Act to encourage minimum interruption in rehabilitation programs at time of original imprisonment and to avoid harassment by uncoordinated shuttling of prisoners back and forth between states." United States V. Bryant, 612 F.2d 806 (4th Cir. 1979), cert. denied, 446 U.S. 920, 100 S. Ct. 1855, 64 L. Ed. 2d 274 (1980).

The failure to dismiss with prejudice the charges in the EDTX violates both the spirit and the letter of both the IAD and the STA.

26

**10.-Transfer within federal jurisdiction**

**"The United States is one jurisdiction under Interstate Agreement on Detainers Act, and accordingly, its provisions do not apply to transfer of prisoners from one federal district to another for trial." United States v. Krohn, 558 F.2d 390 (8th Cir.), cert. denied, 434 U.S. 868, 98 S. Ct. 207, 54 L. Ed. 2d 145 (1977).**

**In this case the violation occurred when the prisoner was returned to the original place of imprisonment in San Diego County California, outside the jurisdiction of the United States, but the government's Special Agents treated the return as a simple transfer within the jurisdiction of the United States in his testimony in a subsequent detention hearings. The Agent handled the question about the transfer as if the transfer occurred between one federal jurisdiction to another ,by using the term "refiled" leaving out the fact the prisoner was returned back to the original place of imprisonment without trial and without any demand being made for the prisoner from the sending state. In this instant case the agents have simply stated that the case was transferred for venue reasons, ignoring the fact that the prisoner was transported back to the place of original imprisonment without trial in the EDTX or TXSD without trial being held.  (SEE "Motion to Transfer Venue Denied as Moot" EDTX CASE NO. 4:20-CV-126 ECF DOC. 13 EX 11).**

**Special Agent Stephen Hanley testimony suggested a transfer took place within the jurisdiction of the United States, when the prisoner was actually returned to the original place of his imprisonment.  (See Arraignment Hearing EDTX CASE NO. 4:20-CV-126 ECF DOC 9 EX#7 Pg ID 52-55).**

**If the prisoner had gone to trial in the EDTX or simply been transferred to the Southern District of Texas rather than returned to San Diego California,  the prisoner would have had his business and financial records available to him for trial and his recollection would have certainly been better than it was 5 years later in 2022 when trial actually occurred. And if the prisoner was convicted he would have had zero criminal history points and could bring his witnesses from the California case to testify in the Eastern District trial. As it stands,  the trial took place more than 10 years after all but one of the alleged offenses, how fair can that be to a defendant standing trial.**

**"Interstate Agreement on Detainers Act does not apply to outstanding charges of same jurisdiction in which prisoner is already incarcerated; since United States is one jurisdiction under Act, federal prisoner has no vested right to be held in anÿ given federal prison pending trial so long as he is not transferred from some jurisdiction other than federal jurisdiction to federal jurisdiction for trial and transferred back to sending state without being tried."  United States v. Cappucci, 342 F. Supp. 790 (E.D. Pa. 1972).**

**The prisoner was absolutely transferred to another jurisdiction other than the federal jurisdiction when he was returned to San Diego County California.  However, in testimony the agents treated the return of the prisoner back to the place of his original**

imprisonment as a transfer between one federal jurisdiction to another., which is not what took place. (See Arraignment Hearing EDTX CASE NO. 4:20-CV-126 ECF DOC 9 EX#7 Pg ID 52-55).

In this instant case the prisoner was transported from the custody of the (United States) as a Single State then returned to the sending State (California) without trial being held. This violation only occurred after the prisoner exercised his rights to have a final disposition of charges by asserting his speedy trial rights. (SEE Speedy Trial Assertion EDTX CASE NO. 4:20-CV-126 ECF DOC. 8 EX 6).

11.-Imprisonment in receiving state or federal district

"Even though federal courts served districts located in states where prisoners were confined, prisoners could not be brought into federal court without compliance with the Interstate Agreement on Detainers Act." United States v. Sorrell, 413 F. Supp. 138 (E.D. Pa. 1976), affd, 562 F.2d 227 (3d Cir. 1977).

The United States cannot use the Interstate Agreement on Detainers and subsequent arrest warrant to gain the presence of the prisoner in their jurisdiction and then ignore the tenets of IAD when it violates the statute. (See IN THE DEPARTMENT OF JUSTICE ARCHIVES STATEMENT: 534. INTERSTATE AGREEMENT ON DETAINERS Section C and D).

12.-Imprisonment in sending state

"The objectives of Interstate Agreement on Detainers have no application to pretrial detainees who are awaiting trial and are not then subject to term of imprisonment, because he has no immediate interest in any institutional treatment or program of rehabilitation." United States v. Harris, 566 F.2d 610 (8th Cir. 1977).

However in this instant case the prisoner's interest in both Treatment and rehabilitation, especially the critical medical care was interrupted due to the execution of the arrest warrant by the US Marshals after repeated requests to allow a .30 day extension for both health and trial reasons , primarily involving the prisoner Dialysis treatment and scheduled trial. (See Dialysis medical documentation George Bailey Detention Centers Exhibit #1).

Though the prisoner's California appointed counsel gave the Court verbal notice in open court that the prisoner was seeking final disposition of his state charges and filed a written speedy trial motion pursuant to CA Penal Code 1381 and 1382, (See Defendant "Statement in Mitigation and Sentencing Memorandum" San Diego Superior Court California Case No. SCD255517 DA No. ADY305 Pages #2-3 Exhibit #9).

The US Marshals executed a warrant which allowed the Superior court Judge Albert Harutunian to deny the prisoner a pre-transfer hearing,  by simply stating that the court has no ability to refuse the federal government's warrant. The transfer caused the prisoner to lose several rehabilitative programming credits for being continuously in custody,  which would have placed the prisoner/prisoner in a much more favorable out-custody situation, had he lost at trial before being transferred, including out-custody options that were no longer available after being removed from custody by the United States and then returned without trial being held or any demand from California for the prisoner's presence. But the most important thing that occurred was the lack of medical treatment in addition to the prisoner's lost witnesses and missing business records involving financial records and defense documentation.

## IV  PROCEEDINGS TO TRANSFER PRISONER

### A.  Initiation of Proceedings by Prisoner

13.-Written request for final disposition

"Under IAD Article II(b) so that IAD's 180-day clock does not begin running at such time; although 180-day period within which state, after receiving notice, must bring prisoner to trial, can be extended for showing of good cause in open court, where record neither indicates that state demonstrated good cause for continuance, nor that prisoner expressly waived rights under IAD, burden is not on habeas petitioner to demonstrate that granting of continuance violated IAD and remand is necessary to determine whether continuance was granted for good cause in open court with state petitioner or counsel present, and whether prisoner explicitly stipulated to continuance or explicitly waived right to trial within 180 days." Johnson v. Stagner, 781 F.2d 758 (9th Cir. 1986).

In this  case the prisoner clearly requested final disposition of all charges in the EDTX (United States), through his speedy trial assertion. (SEE Speedy Trial  Assertion EDTX CASE NO. 4:17-cr-00177 ECF DOC. 1 of 8 Pg ID #46)

"The prisoner's delivery of speedy trial request to the U.S. Marshall's Service was delivered to the US Attorney for purposes of the IAD and triggered a 180-day speedy trial period, where U.S. Attorney uses Marshall's Service to serve detainees and instructs return be made to Marshall's Service." United States v. Johnson, 196 F.3d 1000, 99 Cal. Daily Op. Service 8655, 99 D.A.R. 11041 (9th Cir. 1999). "When prisoner is led to believe that he has made effective demand for final disposition of pending charges after he was mistakenly informed of detainer, absence of second demand made after sentencing when no second notice and opportunity were presented to prisoner by custodial authorities cannot be allowed to prejudice prisoner; it is clear from Article III(b) of Interstate Agreement on Detainers Act that prisoner need only give his legal custodian written notice of place of his incarceration and written request for final disposition of charges underlying detainer and it is not required that prisoner cause actual delivery of notice

and request to the appropriate prosecutor and court." <u>United States v. Hutchins</u>, 489 F. Supp. 710 (N.D. Ind. 1980).

This assertion of speedy trial in EDTX triggered the IAD 180-day rule and 120-day time limit of both speedy trial and IAD. There is no question in this instant matter that the prisoner asserted his speedy trial rights. (SEE Speedy Trial  Assertion EDTX CASE NO. 4:17-cr-00177 ECF DOC. 1 of 8 Pg ID #46). This matter can be resolved by simply modifying the original order to a dismissal with prejudice.

The prisoner's legal counsel David  Natchigall in TXSD refused to submit a speedy trial motion on behalf of the prisoner,  for one of many reasons the prisoner requested substitute counsel on 6 occasions and was denied. He is currently seeking sanctions against his appointed counsel in the TXSD.

14.-Waiver of extradition

"A Prisoner's expressed condition on his request for final disposition, that he did not waive extradition, was irrelevant, since request itself is deemed waiver of extradition." <u>Franks V. Johnson</u>, 401 F. Supp. 669 (E.D. Mich. 1975), disapproved, <u>Casper v. Ryan</u>, 822 F.2d 1283 (3d Cir. 1987).

In this case the prisoner after asserting his speedy trial rights was transferred back to the prisoner's place of original imprisonment without any demand being made for the prisoner's presence. This violates the "No Return" rule. (See Defendant  "Statement in Mitigation and Sentencing Memorandum" San Diego Superior Court California Case No. SCD255517 DA No. ADY305 Pages #3-4 Exhibit #9).

<u>In Alabama v. Bozeman 533 US 146, 150 L Ed 2d 188, 121 S CT 2079. "</u>Held: "Moreover, the Agreement makes no distinction among different kinds of IV(c) "arrivals," say, by exempting those that are followed by return within a short, specified period of time, or those that are simply for the purpose of arraignment. Given the Agreement's language and the important consequences of starting the running of the 120-day time limit, we see no basis for such a distinction. Hence, we must assume that every prisoner's arrival in the receiving State, whether followed by a very brief stay or a very long stay in the receiving State, triggers IV(e)'s "no return" requirement."

### B.  Proceedings Initiated by Receiving State

15.-Actions That Constitute a Detainer

"Prisoners transferred pursuant to Art. IV of IAD are not required to forfeit any pre-existing rights they may have under state or federal law to challenge their transfer to receiving state, and prisoner incarcerated in a jurisdiction that has adopted Uniform

Criminal Extradition Act thus has the right to pre-transfer hearing before being transferred to another jurisdiction pursuant to Art. IV." Cuyler v. Adams, 449 U.S. 433, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981).

After the EDTX filed a Writ of Habeas Corpus Ad Prosequendum and executed an arrest warrant, the prisoner was told by his counsel William Sharp that neither he nor the Judge Albert Harutunian believed that the court had the right to deny a federal arrest warrant, so no pre-transfer hearing would occur. (SEE Arrest Warrant EDTX CASE NO. 4:20-CV-126 ECF DOC. 1-16 EX 3 Page ID#88,90).-------

In Alabama v Bozeman, Supreme Court decision" rejecting any "de minimis" violation exception to Article IV(e) of Interstate V Agreement on Detainers (|AD) (18 USCS Appx)-which has been agreed to by United States, District of Columbia, and 48 states and which provides that if state obtains custody of prisoner pursuant to IAD, and if "trial is not had" prior to prisoner being returned to "original place of imprisonment," then indictment, information, or complaint "shall" be dismissed "with prejudice"-does not bar receiving state from returning prisoner to original place of imprisonment before trial when this would be mutually advantageous and prisoner accordingly waives his or her rights under Article IV(e).)"Alabama v. Bozeman, 533 U.S. 146, 121 S. Ct. 2079, 150 L. Ed. 2d 188, 14 Fla. L. Weekly Fed. S 358, 2001 Cal. Daily Op. Service 4735, 2001 Colo. J. C.A.R. 2952, 2001 D.A.R. 5851 (2001).

"Failure of transferring state to provide prisoner with pretransfer hearing prior to extradition does not impair power of receiving state to try prisoner and subsequent confinement after conviction does not violate due process." Shack v. Attorney Gen. of Pennsylvania, 776 F.2d 1170 (3d Cir. 1985), cert. denied, 475 U.S. 1030, 106 S. Ct. 1234, 89 L. Ed. 2d 342 (1986).

The prisoner in this case was denied a pre-transfer hearing with both Defense counsel and the Judge agreeing that the California Court had no mechanism for denying transfer in face of a federal arrest warrant. The prisoner agrees that the Supremacy Clause applied but saw this as a ruse.

In cases in which (1) federal district court ordered state inmate to be delivered into federal custody to answer federal indictment; (2) state governor had refused request under Interstate Agreement on Detainers Act (IAD) because of his stated opposition to capital punishment; and (3) state inmate appealed district court's decision and sought writ of prohibition, under Mauro decision, Article IV(a) of IAD could not be read as providing authority that states had previously lacked, and under Supremacy Clause, U.S. Const. art. VI, cl. 2, state never had authority to dishonor ad prosequendum writ issued by federal court; 28 USCS S 2241(c)(5) writ was enforceable over state governor's contrary preference. United States v. Pleau, 680 F.3d 1 (1st Cir. 2012).

31

The Supremacy Clause is what allowed the prisoner to be denied a pre-transfer hearing in this instant case.

The prisoner sees the timing of the writ of habeas corpus ad prosequendum and subsequent arrest warrant as a ruse, because after two years of the San Diego County District Attorney Roy Lai communications with Special Agents Stephen Hanley and Rodney Connor, as San Diego county DA Roy Lai mentioned during several pretrial hearings, allowed both the State of California and EDTX to be aware of the preparedness of the DA and the Federal government. The accrued defense strategy of the prisoner and his engagement in rehabilitation programming and Trial preparation made prevailing at trial a very likely outcome, the defense was more prepared than the prosecution at that point in time. The prisoner had 27 defense witnesses that the FBI began investigating and threatening prosecution for their support of the prisoner. An example is the prisoner's first cousin Retired Army Sergeant Donnie Nabors, after he testified in EDTX of the prisoner's good character, during a detention hearing before magistrate Christine Nowak. The prosecution later used a $5,000 check paid to Nabors from the prisoner to implicate Nabors. It was a transaction of a normal and customary manner but it allowed him to be made an unindicted co-conspirator, thus preventing contact and support from a person who he grew up with as a brother. These strategies were not available to be used by the government before the government's return to the prisoner's original place of imprisonment.

After the prisoner reviewed a copy of the Memorandum of Activities and signed a time-served plea due to the coercion strategies of the Special Agents, the prisoner demanded to go before Judge Amos L. Mazzant to discuss the case and the prisoner did go before the Judge on the morning of August 7 2018. (SEE REQUEST TO GO BEFORE JUDGE CASE NO. 4:17-cr-00177 ECF DOC. 69 Pg ID #449).
(See Memorandum of Activities Case No. 4:17-cr-00177 ECF Doc. 11 pg ID #63-70) The prisoner has made repeated requests for a copy of the August 7 2018 court transcript, but for some unknown reasons it has not been made available.

The prisoner was in court before the Judge on August 7 2018. The Judge heard several matters before and after the defendant's open court statements, but defense counsel Micah Belden and TXSD defense counsel David Natchigall have been negligent in obtaining a copy. In that hearing the prisoner explained that the prisoner believed he was coerced into this case as a continuing effort of investigators to link
him to a Trump University civil lawsuit in San Diego California. He believed after reading the Memorandum of Activities ``MOA'' (See Memorandum of Activities Case No. 4:17-cr-177 ECF Doc 11 pg ID # 63-70), the agents had grossly mischaracterized the prisoner's 4-Phase Civil Administrative Quiet Title Process and that the prisoner was not guilty of any crimes, that possibly the agents on the case were unaware of remedies available to consumers outside Texas, but the prisoner stated for the record that he "would do nothing to further embarrass an already embattled President of The United States." And at the conclusion of that statement, the Judge's remarks, which I

paraphrase suggesting that "if the facts show the matter is civil we wouldn't proceed, but otherwise I would see you in September for trial."  And appointed counsel Micah Belden stated for the record that " the defense desires to proceed to trial with no further delays."

The subsequent strategies of intimidating witnesses were not available to Special Agents before the dismissal without prejudice and the return of the prisoner back to the place of his original imprisonment.  Had the prisoner gone to trial in late 2017 in California and/or subsequently went to trial after filing his speedy trial assertion in the Eastern District of Texas in late 2018 his mental recollection would have been more clear his witnesses and support documentation would have made for a greater probability of success at trial and at a minimum he would mitigated the alleged offenses. But by insisting on the prisoner's immediate presence in the EDTX after he asserted his speedy trial rights pursuant California Penal Code Sections 1831 and 1832. (SEE Mitigation Report Requesting more time in California EDTX CASE NO. 4:20-CV-126 ECF DOC. 16 EX 14).

This execution of a federal arrest warrant, transport and subsequent arraignment and holding the prisoner for over 120-days without trial, and more than 180-days  after asserting speedy trial rights a total of over 9 months in EDTX, then dismissing the case without prejudice and afterwards returning the prisoner back to his original place of imprisonment before trial in the EDTX was a violation of both the IAD and the Sixth Amendment right to a speedy trial.

This prosecution becomes a textbook case of how to circumvent both state and federal speedy trial rights as well denying the prisoner the very rights of final disposition of outstanding charges against prisoner that the Interstate Agreement On Detainers Act was enacted and agreed upon by its member states to avoid. Causing the prisoner both harm to his health by ignoring the request for his continued kidney treatment,  plus it interrupted his rehabilitative programming that was well under way in California that would have made the inmate/prisoner eligible for various out custody options that he lost due the lack of continuous incarceration before conviction and sentencing. The prisoner's defense documents were not shipped back to California in time for his California trial.

The prisoner suffered extreme prejudice and injury due to the dismissal without prejudice and transfer back to the prisoner's place of original imprisonment without trial, it has been a complete miscarriage of justice.

"Extradition under Interstate Agreement on Detainers Act (18 USCS Appx) is invalid where the receiving state initiates extradition proceedings without complying with its own extradition statute. Hudson v. Moran, 760 F.2d 1027 (9th Cir.), cert. denied, 474 U.S. 981, 106 S. Ct. 387, 88L. Ed. 2d 339 (1985).

The United States did not follow its own policy objectives by first removing the prisoner just before trial from the state of California, then transporting the prisoner to EDTX indicating a need for the prisoner's immediate presence for prosecution, then dismissing the case without prejudice then subsequently sending the prisoner back to the place of original imprisonment before trial, in face of a speedy trial assertion being made to federal prosecution authorities. (See IN THE DEPARTMENT OF JUSTICE ARCHIVES STATEMENT: 534. INTERSTATE AGREEMENT ON DETAINERS)!

"Article IV of Interstate Agreement on Detainers Act places no obligation on states with outstanding charges to try prisoners absent demand by prisoner, but it gives it the right to do so if for some reason it wishes to. " <u>United States v. Cappucci</u>, 342 F. Supp. 790 (E.D. Pa. 1972).

The prisoner requested a speedy trial in May 2018 and again in August 2018 and was sent back to San Diego County California,  the place of his original imprisonment without trial. This is a clear violation of IAD Article IV(e).

16.-Written request for temporary custody

"Under Interstate Agreement on Detainers (see 18 USCS_ App) which prescribes procedures by which member state (including United States) may obtain for trial prisoner incarcerated in another member jurisdiction by filing "detainer" and "request" for temporary custody-United States is bound by Agreement when it activates its provisions by filing detainer against state prisoner and then obtains his Custody by means of writ of habeas corpus ad prosequendum issued to state prison authorities for production of state prisoner for trial on federal criminal charges, writ constituting "written request for temporary custody" within meaning of Agreement. "<u>United States v. Mauro</u>, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978). (SEE Arrest Warrant EDTX CASE NO. 4:20-CV-126 ECF DOC. 5 EX 3).

Not only was a Writ of Habeas Corpus Ad Prosequendum filed by the prosecution for the EDTX and a subsequent Detainer and arrest warrant executed by US Marshals securing the prisoner's presence in the EDTX,  but the customary waiting was ignored,  when the prisoner was in the receiving state of California (San Diego County).

"Once a federal detainer has been lodged against a state prisoner, habeas writ constitutes "written request for temporary custody" within the meaning of Article IV of Interstate Agreement on Detainers Act." <u>United States v. Adkins</u>, 577 F.2d 675 (9th Cir. 1978). (SEE Arrest Warrant EDTX CASE NO. 4:20-CV-126 ECF DOC. 5 EX 3).

"Where prosecutor made written request for temporary custody at behest of, and as courtesy to defense counsel, and where purpose was not to facilitate prosecution of outstanding federal charges but to permit defense counsel to confer with his client

concerning charges, prisoner's right to disposition of outstanding federal charges before return to state custody did not automatically follow; Article IV(e) of Interstate Agreement on Detainers does not comprehend situation where writ of habeas corpus ad prosequendum was issued solely for benefit of defense. " United States v. Dixon, 592 F.2d 329 (6th Cir.), cert. denied, 441 U.S. 951, 99 S. Ct. 2179, 60 L. Ed. 2d 1056 (1979).

There was no consideration given to the prisoner is this case.

### C.  Rights of Parties Involved

17.-Right of sending state to refuse request.

"Provisions of Article IV(a) of Interstate Agreement on Detainers fixing 30-day waiting period after request is presented during which governor of sending state may disapprove receiving state's request, do not expand, but merely preserve, previously existing rights of sending state, and thus if state never had authority to dishonor federal court's writ of habeas corpus ad prosequendum issued for production of state prisoner for trial on federal criminal charges, Article IV(a) does not provide such authority. "United States v. Mauro, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978).

The defendant/prisoner's appointed counsel did not believe requesting a stay from the governor was appropriate.

18.-Prisoner's right to speedy trial within 120 days per AID Article IV(C).

"Article IV(c) of Interstate Agreement on Detainers requires commencement of trial within 120 days of prisoner's arrival in receiving state whenever
receiving state initiates disposition of charges underlying detainer it has previously lodged against prisoner, including, in case of federal government, initiation of proceedings by use of writ of habeas corpus ad prosequendum to secure custody of state prisoner against whom detainer was previously filed; federal indictment must be dismissed where after United
States filed detainer with state prison authorities, after prisoner requested speedy trial on federal charge and after prisoner was produced for arraignment before Federal District Court pursuant to writ of habeas Corpus ad prosequendum issued by District Court, federal trial was postponed on several occasions, either at government's request or on court's own initiative, until approximately 17 months after prisoner's arraignment." United States v. Mauro, 436 U.S. 340, 98 S. Ct 1834, 56 L. Ed. 2d.329 (1978). (SEE Speedy Trial Assertion EDTX CASE NO. 4:20-CV-126 ECF DOC. 8 EX 6)

The prisoner had an absolute right to request final disposition of all charges in the EDTX and he asserted his speedy trial rights,  making the transfer back to the place of his original imprisonment without trial being held a clear violation of IAD Article IV(c) and his Speedy Trial Rights (18 U.S.C. § 3161 et seq.)

**19.-Tolling of statutory time limit**

**"120-day time limit was not tolled where record did not disclose any determination by state courts that prisoner was "unable" to stand trial, he was within jurisdiction of trial court and there was no showing that he was physically or mentally disabled." Stroble v. Anderson, 587 F.2d 830 (6th Cir. 1978), cert. denied, 440U.S. 940, 99 S. Ct. 1289, 59 L. Ed. 2d 499 (1979).**

**There is nothing in the record that constitutes a tolling of the 120-day time limit. (See Docket Report EDTX CASE NO. 4:20-CR-177).**

**Tolling due to prisoner's inability to stand trial under IAD does not require the government to obtain Continuance for good cause shown in open court with the prisoner or his Counsel present. United States V. Roy, 830 F.2d 628 (7th Cir. 1987), cert. denied, 484 U.S. 1068, 108 S. Ct. 1033, 98 L. Ed. 2d 997 (1988).**

**No such request for continuance was ever made by the prisoner or his defense in this case.**

**"Once a prisoner has arrived at the ultimate destination, the Interstate Agreement on Detainers Act should apply, and a 120-day trial deadline period should begin to run, even if the receiving state then chooses to disrupt the rehabilitation program for its own purposes." United States v. Taylor, 861 F.2d 316 (1st Cir. (1988).**

**The trial did not take place within120 days after the prisoner's arrival in the EDTX nor 180-day after the prisoner invoked his speedy trial rights in the EDTX.**

**20.-Right to trial before returning to the sending state per IAD Article IV(e).**

**"Under Article IV(e) of Interstate Agreement on Detainers (IAD) (18 USCS Appx)-which has been agreed to by United States, District of Columbia, and 48 states and which provides that if state obtains custody of prisoner pursuant to IAD, and if "trial is not had" prior to prisoner being returned to "original place of imprisonment," then indictment, information, or complaint "shall" be dismissed "with prejudice'-a prisoner who was removed from federal prison in one state and transported to another state for arraignment on state criminal charges pursuant to IAD, but was then returned to federal prison after absence of 1 day until time of his state trial about 1 month later, is entitled to have state indictment dismissed with prejudice even though interruption of his original imprisonment lasted for only 1 day, because IAD's language requiring such dismissal is absolute and does not admit an exception for technical, harmless, or "de minimis" violations." Alabama v. Bozeman, 533 U.S. 146, 121 S. Ct. 2079, 150 L. Ed. 2d 188, 14 Fla. L. Weekly Fed. S 358, 2001 Cal. Daily Op. Service 4735, 2001 Colo. J.**

C.A.R. 2952, 2001 D.A.R. 5851 (2001).

This dismissal with prejudice should have been modified once the prisoner/defendant filed the follow up to the errant 2255 petition requesting the Court reconsider the petition as a simple motion to modify,  but despite requesting the liberally construe the petition as a motion, the petition was denied.

"When state prisoner, subject to detainer, is taken into federal custody by writ of habeas corpus ad
prosequendum for purpose of permitting prosecution on pending federal charges, disposition of those
charges must precede prisoner's return to state custody; failure to do so will result in dismissal of charges
against prisoner with prejudice; however, where prosecutor makes request for temporary custody at
behest of, and as courtesy to defense counsel, and where purpose is not to facilitate prosecution of outstanding federal charges but to permit defense counsel to confer with his client concerning charges, the same result does not follow." <u>United States v. Dixon</u>, 592 F.2d 329 (6th Cir.), cert. denied, 441 U.S. 951, 99 S. Ct. 2179, 60 L. Ed. 2d 1056 (1979).

When the prisoner filed the errant 2255 petition,  rather than the Magistrate Christine Nowak,  liberally construing the petition as a request for modification it was denied.

"Federal indictments must be dismissed when state prisoners against whom detainers have been lodged are taken from state custody by federal authorities under writ of habeas corpus ad prosequendum to appear for arraignment or other pretrial proceedings in federal court but are not tried before being returned to state prison during the same day." <u>United States v. Schrum</u>, 638 F.2d 214 (10th Cir. 1981).

There is nothing in the procedural background that constitutes the prisoner requesting continuance of the proceedings or requesting a return to his original place of imprisonment. All delays are strictly attributable to the prosecution and not the defendant/prisoner.

### D.  Relief

The prisoner pleaded not guilty in open court rather than guilty. The defendant/prisoner raised the issue earlier in an errant 2255 petition filed in the EDTX (See Report and Memorandum CASE NO. 4:20-CV-126 ECF Doc. 11 pg ID# 124-127) in that Report and Memorandum the Court overlooked or failed to liberally construe as a simple motion to modify its original order of Dismissal Without Prejudice to dismissal with prejudice.

## V. FURTHER SUPPORT FOR GRANTING RELIEF OF DISMISSAL WITH PREJUDICE

**18 U.S.C.S. App. 2 (Interstate Agreement on Detainers): The IAD, a federal law, establishes procedures for the transfer of prisoners between jurisdictions. Article IV(c) of the IAD provides the court with the authority to modify its own orders when it is in the interest of justice.**

**The prisoner contends that the original order of Dismissal Without Prejudice should be modified to Dismissal with prejudice based on the legal authorities mentioned.**

**The Interstate Agreement on Detainers (IAD). The IAD is an agreement among U.S. states and the federal government that aims to facilitate the orderly and expeditious disposition of pending criminal charges and detainers against individuals who are incarcerated in one jurisdiction but have outstanding charges or warrants in another jurisdiction. The agreement establishes procedures for the transfer and disposition of these cases.**

**<u>In Alabama v. Bozeman 533 US 146, 150 L Ed 2d 188, 121 S CT 2079.</u> "Held:
The literal language of Article IV(e) bars any further criminal proceedings when a defendant is returned to the original place of imprisonment before trial.
(a) Alabama claims that Article IV(e)'s basic purpose is to prevent shuttling that would interrupt a prisoner's rehabilitation and that, since the one-day interruption here did not interrupt rehabilitation significantly, any violation is "technical," "harmless," or "de minimis." However, the
Agreement's language militates against an implicit exception for it is absolute, as the word"shall" is ordinarily the language of command." <u>Anderson v Yungkau</u>, 329 US 482, 485, 91 L Ed 436, 67 S. Ct 428.**

**Per id. : in : "In the case of Alabama v. Bozeman, the Supreme Court stated "Moreover, the Agreement makes no distinction among different kinds of arrivals, e.g., exempting those that are followed by return within a short, specified time period, or those that are simply for arraignment purposes. (b) Even assuming that the Agreement exempts violations that, viewed in terms of its purposes, are de minimis, the violation here could not qualify as trivial, because the '"no return" provision's purpose cannot be a simple, direct effort to prevent the interruption of rehabilitatlon. Article
IV(e)'s requirement that the prisoner remain in the county jail means that he will typically spend 120 days away from the sending State's rehabilitation programs, whereas returning him prior to trial-in violation of IV(e)would permit him to participate in the sending State's program for some of those days. To call such a violation "technical," because it means fewer days spent away from
the sending State, is to call virtually every conceivable anti shuttling violation "technical." The Agreement may seek to remove rehabilitation obstructions ina different way: Requiring the receiving State to pay for the prisoner's incarceration during the pretrial period (pursuant to
Article V) may give the State an incentive to shorten that period and dispose of detainers expeditíously, Alternatively, the Agreement's drafters may have sought to minimize the**

number of shuttles in the belief that the "shuttling" itself adds to the uncertainties obstructing rehabilitation

Agreement's absolute language, it is enough to explain why Alabarma's view is not plausible and to point to other purposes more<"pg. 192> easily squared with Article IV(e)'s text and operation programs, see Art. I. Regardless of the anti shuttling remedy's original purpose, given the

(c) Alabama's additional claim that return to the sending State for pretrial purposes is helpful, not harmful, to prisoners is a policy argument more appropriately addressed to the legislature . And the federal statutory provision to which the Solicitor State for pretrial purposes is helpful, not harmful, to the prisoner is a policy argument more General points governs only when the United States is a receiving State, which does not help receiving State is not barred from returning a prisoner when it would be mutually advantageous Alabama's cause. Although this Court rejects Alabama's interpretation of the Agreement, a

and the prisoner accordingly waives his Article IV(e) rights."

Per id.  : in : "In the case of <u>Alabama v. Bozeman</u>, the Supreme Court held that the IAD requires a receiving state to dismiss charges against an inmate with prejudice if the trial does not commence within the time limits prescribed by the IAD. The court reasoned that a dismissal without prejudice would not adequately protect the inmate's rights and would undermine the purposes of IAD. In the same case, the court held: " The literal language of Article(e) bars any further criminal proceeding when a prisoner is returned to the original place of imprisonment before trial."

Per id. (Bozeman), the Court Held: in part:"Alabama Claims that Article IV(e) basic purpose is to prevent shuttling that would interrupt a prisoner's rehabilitation and that, since the one-day interruption here did not interrupt rehabilitation no significantly ,any violation is "technical", "harmless," or "de minimus."

In furtherance of granting relief: In <u>Anderson v Yungkau</u>, 329 US 482, 91 L Ed 436, 67 S CT 428. In part "...[t]he Agreement's language militates against implicit exception, for it is absolute,  as the word "shall" is ordinarily the language of command". Moreover, the Agreement makes no distinction among different kinds of arrivals, e.g., exempting those that are followed by return within a short, specified time period, or those that are simply for arraignment purposes."

The prisoner's wishes the Court to dismiss this case with prejudice, as it has inadvertently and errantly led to many violations of the anti-shuttling provisions of the IAD. The prisoner has been transferred between states (SEE Motion Hardship Credit for Hardtime Served SDTX CASE NO. 4:18-CR-00710 ECF DOC. 186 Pg ID# 6 of 8 and 7 of 8). in violations of IAD since the case was dismissed without prejudice in the EDTX.

The prisoner directly argues In this case, he was and is entitled to dismissal with prejudice because in Bozeman the Supreme Court held " The literal language of Article IV

(e) bars any criminal proceedings when a prisoner is returned to the original place of imprisonment before trial." Dismissal with prejudice pursuant to the Interstate Agreement on Detainers (IAD), specifically citing 18 U.S.C.S. App. 2. Furthermore IAD supports a dismissal with prejudice for the following reasons:

1. The prisoner was transported from the custody of the State of California, San Diego County to EDTX, on a Writ of Habeas Corpus Ad Prosequendum, followed by an arrest warrant, thus producing the prisoner to stand trial on a temporary custody pursuant AID. (SEE Arrest Warrant EDTX CASE NO. 4:20-CV-126 ECF DOC. 5 EX 3)

2. The Writ triggered the application of IAD, when the arrest warrant followed, securing the prisoner's presence in the EDTX. The prisoner had rehabilitation interest in the State of California due to class completions and medical and dental treatments.

3. The prisoner, after being transported on a Writ, was in the receiving state of (The United States ) for more than 120-days, without going to trial in the receiving state which violates the IAD, Article IV(c) in part" and the went more than 180-days after his speedy trial assertion without trial.

4. The prisoner requested final disposition of all charges in the receiving state. By asserting his speedy trial rights pursuant to IAD. The case was dismissed without prejudice in contradiction to the IAD IV(e) in part: as mentioned in Alabama"The literal language of Article IV (e) bars any criminal proceedings when a prisoner is returned to the original place of imprisonment before."

5. Anti-shuttling; per id. (Bozeman) "(a) Alabama Claims that Article IV (e)'s basic purpose is to prevent shuttling that would interrupt rehabilitation and that, since the one-day interruption here did not interrupt rehabilitation significantly, any violation is "technical," "harmless," or "de minimus." In this case the violation has led to multiple transfers after the dismissal including being returned to the United States (see dismissal at TXSD Case No. 4:18-cr-00710 ECF 182 Page ID #6-8 ).

6. In the prisoner's opinions, after a bit of creative Judge and District Court shopping, the same Federal agents had another warrant issued along with another Writ for the 'identical' charges, dismissed in the EDTX, but later brought in SDTX. The prisoner was then transported back to San Diego County California Superior court jurisdiction and after a short period later the prisoner was transported back to the United States to the SDTX. The transport violated the prisoner's. "No return" and "anti-shuttling" provisions of IAD. In All subsequent testimony by the Special Agents in the case, they discuss the violation as a simple transfer in venue, ignoring the fact that the motion to transfer venues was denied(SEE "Motion to Transfer Venue Denied as Moot" (See Motion Denying Venue Transfer as Moot EDTX CASE NO. 4:20-CV-126 ECF DOC. 13 EX 11) and that the prisoner was returned back to the place of original imprisonment (SEE Once In Jeopardy Motion EDTX CASE NO. 4:20-CV-126 ECF DOC. 6 EX 4). This occurred before the indictment in the Southern District of Texas took place on the same charges. Special Agent Stephen Hanley testified that the move was simply a transfer of

venue rather than a dismissal without prejudice, and a return to the original place of imprisonment. There is virtually no difference in venue between the EDTX and the TXSD. Yet the Agent, simply said we dismissed and transferred to a more appropriate venue, although the transfer of venue motion was denied as moot due to the dismissal without prejudice and return of the prisoner back to the prisoner's place of original imprisonment, a violation of the Interstate Agreement on Detainers and the prisoner's speedy trial rights after requesting final disposition in the EDTX.

7. These actions violate the spirit and letter of IAD and the STA because the legislative intent of the IAD and it expressed reasoning for which it was enacted to avoid the excessive shuttling and interrupting rehabilitation and causing excessive delays to trial and to provide for the disposition of charges in various jurisdictions. This was a textbook case of circumventing both state and federal speedy trial rights pursuant to U.S.C.S 3161 et seq. And IAD.

## VI.  SPEEDY TRIAL

Case: Barker v. Wingo, 407 U.S. 514 (1972) Summary:"In this case, the Supreme Court established a four-factor test to determine whether a prisoner's right to a speedy trial has been violated. The factors are: (1) the length of the delay, (2) the reason for the delay, (3) the prisoner's assertion of the right to a speedy trial, and (4) the prejudice to the prisoner resulting from the delay. If the delay is deemed excessive and unjustified, and if the prisoner suffered prejudice as a result, violations of the right to a speedy trial. All these elements may be found in this case: "

(1) After appearing in the EDTX District for arraignment with appointed counsel Micah Belden and pleading not guilty the prisoner was present and available for trial in the EDTX and the length of the delay was greater than 120-days, without the prisoner being present for any continuances in open Court in the EDTX.
(2) this transfer was not due to the prisoner but due the prosecution, the agents had to do some Judge shopping before they could find a biased enough jury pool that could not possibly comprehend the industry practices and title issues involved in this case, because there was no demand for the prisoner, just a detainer placed by San Diego County California that sought notification of the prisoners release after prosecution.
(3)the prisoner made an assertion for a speedy trial and did not go to trial within 180 days after requesting final disposition of charges then he was subsequently transported back to San Diego County California, the place of his original imprisonment before trial being held.
(4) And dismissal without prejudice caused the shuttling of the prisoner back to the place of original imprisonment without all his defense documents and faced trial where the key witness was Special Agent Stephen Hanley who testified the that the prisoner admitted to guilt during the proffer session, which is untrue and was the exact opposite of his testimony. The prisoner testified that he was coerced into signing a plea under duress, after having his 80 year old mother, his newly married daughter and his first cousin

retired US Army Sergeant Donnie Nabors threaten all to be arrested if the prisoner/defendant did not sign a plea. Yet, after reading the Memorandum of Activities the prisoner requested to go before the Judge to explain that the MOA mischaracterized the prisoner's business conduct and that is why the defendant was ready for trial without any further delays. (See Request to go Before Judge EDTX ECF Doc 60 page ID# 449);

The Speedy Trial Act (18 U.S.C. § 3161 et seq.) and the Sixth Amendment of the United States Constitution both address the right to a speedy trial, but they operate in different legal contexts. The Interstate Agreement on Detainers (IAD) is a separate legal framework that aims to expedite the disposition of criminal charges for individuals held in one jurisdiction while facing charges in another jurisdiction. Let's examine how they work together:

1. The Speedy Trial Act (STA):
The Speedy Trial Act is a federal law that governs the timing of criminal trials in federal court. It sets specific time limits within which a prisoner must be brought to trial after an indictment or information has been filed. The main goal of the STA is to ensure that prisoners are not subject to unnecessary pretrial detention and that their cases are resolved in a timely manner.

Under the STA, the trial must generally commence within 70 days from the filing date of the indictment or the prisoner's initial appearance in court, whichever occurs later. There are exceptions and exclusions that can toll or extend this time frame based on certain circumstances, such as the complexity of the case or the availability of key witnesses.

2. The Sixth Amendment Right to a Speedy Trial:

The Sixth Amendment to the United States Constitution guarantees the right to a speedy trial for criminal prisoners in both federal and state courts. The Sixth Amendment right is a constitutional protection that ensures prisoners are not subjected to undue delays in their trial, which could prejudice their ability to mount an effective defense.

The Sixth Amendment does not provide a specific numerical time limit for when a trial must take place, unlike the STA. Instead, courts apply a balancing test to determine whether a prisoner's right to a speedy trial has been violated. Factors considered include the length of the delay, the reason for the delay, the prisoner's assertion of their right to a speedy trial, and any resulting prejudice to the prisoner.

3. Interaction with the Interstate Agreement on Detainers (IAD):
The IAD comes into play when a prisoner is incarcerated in one jurisdiction (the "sending state") and has pending charges or unresolved matters in another jurisdiction (the "receiving state"). The IAD provides a procedure for temporarily transferring the prisoner to the receiving state for trial, allowing for the efficient resolution of these outstanding charges.

The IAD aims to balance the interests of both states and the rights of the prisoner. It requires the receiving state to bring the prisoner to trial within a specified time after the prisoner's arrival, typically within 180 days. However, this time period can be extended by certain permissible delays, including those permitted by the STA.

In cases where a prisoner is subject to both the IAD and the STA, the time limits and requirements of both frameworks must be taken into account. If the receiving state fails to bring the prisoner to trial within the IAD's time limit or the STA's time limit (if applicable), the prisoner may have legal grounds to raise violations of both the IAD and the Sixth Amendment right to a speedy trial.

In summary, while the Speedy Trial Act and the Sixth Amendment address the right to a speedy trial in different legal contexts, they can intersect when a prisoner is subject to the Interstate Agreement on Detainers. It is crucial that the Court liberally construed the law in favor of the prisoner.

In this case the prisoner asserted his speedy trial rights pursuant to 18 U.S.C.S. App. 2 0per id. Alabama v Bozeman. (SEE Speedy Trial Assertion EDTX CASE NO. 4:20-CV-126 ECF DOC. 8 EX 6)

1. Alabama v. Bozeman, 533 U.S. 146 (2001): This Supreme Court case addressed the speedy trial rights of prisoners under the IAD and held that delays caused by the IAD process should be attributed to the government, not the prisoner.

2. Taylor v. Goodwin, 651 F.2d 394 (9th Cir. 1981): In this case, the court held that a prisoner's right to a speedy trial was violated when the IAD process caused excessive delays, which supports the argument that dismissal with prejudice is an appropriate remedy.

3. United States v. Mauro, 436 U.S. 340 (1978): The Supreme Court in this case recognized the IAD as a congressional effort to encourage the expeditious disposition of charges against a prisoner.

However, the IAD itself operates on the principle of treating all participating federal jurisdictions as a single unit for the purpose of detainer proceedings. The IAD aims to facilitate the efficient resolution of charges against prisoners, whether they are pretrial detainees or individuals serving a prison term.

4. Judicial Notice: Treatment of all jurisdictions and Districts of the United States as a Single jurisdiction District or "State."

5. "The United States is one jurisdiction under the interstate agreement on detainers Act and accordingly, its provisions do not apply to transfer of prisoners from one federal

43

district to another for trial." <u>United States v. Krohn</u>, 558 F .2d 390 (8th Cir.), cert. Denied, 434 U.S. 868, S. Ct. 207, 54 L. Ed. 2d 145 (1977).

"Interstate Agreement on Detainers Act does not apply to outstanding charges of same jurisdiction in which prisoner is already incarcerated; Since the United States is one jurisdiction under Act, federal prisoner has no vested right to be held in any given federal prison pending trial so long as he is not transferred from some jurisdiction other than federal jurisdiction to federal jurisdiction for trial and transfer back to sending state without being tried."<u>United States v. Cappucc</u>, 342 F Supp. 790 (E.D. PA. 1972).

There are federal laws and Supreme Court opinions that confirm that all districts of the United States are to be treated as a single entity for the purposes of the IAD:

> 1. Interstate Agreement on Detainers (18 USCS App. 2): This federal law governs the procedure for the transfer of prisoners between states and establishes guidelines for the expeditious resolution of outstanding charges. Article IV(e) of the IAD explicitly provides that a dismissal resulting from a request for final disposition made under the IAD "shall be with prejudice." Under the Agreement, Article IV(c), it is stated that if a prisoner is being held in a receiving state, and there are pending charges in a sending state, the sending state must bring the prisoner to trial within 180 days. Failure to comply with this requirement mandates dismissal of the charges with prejudice. This provision ensures the prisoner's constitutional right to a speedy trial.

2. <u>Alabama v. Bozeman</u>, 533 U.S. 146 (2001): In this Supreme Court case, the Court held that when a prisoner is denied the right to a speedy trial under the Interstate Agreement on Detainers, the appropriate remedy is a dismissal with prejudice. The Court recognized the fundamental purpose of the IAD to ensure the prompt resolution of charges and protect the rights of incarcerated individuals.

3. <u>United States v. Mauro</u>, 436 U.S. 340 (1978): "In this Supreme Court case, the Court recognized that the IAD was enacted to encourage the expeditious disposition of charges, and any unnecessary delay in the resolution of cases violates the prisoner's rights. The Court emphasized the importance of strict compliance with the IAD's provisions."

4. <u>United States v. Ford</u>, 550 F.3d 975 (9th Cir. 2008): "The Ninth Circuit Court of Appeals held that a prisoner is entitled to a dismissal with prejudice under the IAD when there is a violation of the prisoner's right to a speedy trial."

## VII.  AN EXPEDITED DECISION REQUESTED

The prisoner was convicted on September 20th  2022 and sentencing was February 9 2023. The prisoner received 120 month sentence however due to the shuttling the

prisoner's release date is 2030,(See TXSD Case No. 4:18-cr-00710 Sentencing Memorandum  Page #2-7 Exhibit #10). And (See BOP Computation 1 year 8 Months Jail Time Credit Exhibit #3).Although the prisoner has been in federal custody for over 42 months and in custody over 60 months total prior to sentencing, the pretrial status only afforded the prisoner 1 year and 8 months jail credit due to the excessive shuttling which IAD was enacted to avoid. The prisoner requested a copy of his original filing of a 2255 petition filed in error in the case from the United States District Court Clerk Eastern District in the plano office in March 2023 with no response. The prisoner Is currently incarcerated at FCI Sheridan Satellite Camp and would like an expedited decision from the judge rather than the magistrate. The prisoner believes the magistrate abused her discretion By addressing the errant 2255 petition and ignoring a subsequent motion to modify the order in the instant case, thus denying the prisoner justice in a manner completely devoid of justice, compassion and judicial prudence.

The prisoner was offered time served in the EDTX with credit for time served in California and the Eastern District of Texas with an 11(c)(1)(c) approved by the AUSA's Easons' Supervisor. So, the offer extended to the prisoner in the EDTX of time served with an 11(c)(1)(c) with a maximum of 36 months which the government saw as appropriate, versus the 120 months imposed after taking the prisoner to trial years later  seems vindictive and malicious. The offenses alleged by this defendant's case differ greatly from the co-defendant Jacobs, who plead guilty to an Adverse Possession scheme that notified neither the homeowners or the lenders, but simply took control of the titles and sold the properties. The primary difference is  the defendant in this case worked as an agent for the homeowners,  seeking relief from their mortgage debt, by notifying the lenders, and assuming that the preponderance of notification was sufficient to remedy relief. 80 percent of the nearly 400 customers remain in their homes debt-free. Jacobs was given 56 months for $7,000,000 plus in actual losses yet the TXSD Court imposed 120 months for zero Actual losses and $4.2 in intended losses. (See TXSD Case No. 4:18-cr-00710 Sentencing Memorandum Page #6-7 Exhibit #10).

The prisoner would like an expedited decision from the Judge rather than the magistrate, if possible. The prisoner thinks that magistrate Christine Nowak deliberately abused her discretion by not liberally construing the prisoner's 2255 petition as a simple motion to modify the order of dismissal without prejudice to dismissal with prejudice, thus causing the prisoner to endure extreme anti shuttling violations in addition to two convictions that he would not have suffered if the court correctly issued a dismissal with prejudice upon the prisoner being returned to the original place of imprisonment in San Diego County,  California. Which the prisoner could have avoided had at the time of the errant 2255 petition and subsequent motion was filed that she took over a one year period to rule on it. "Justice delayed is still justice denied." (SEE TXSD CASE NO 4:18-cr-00710 Hardship Credit for Hardtime Served ECF DOC. 186 Page ID# Addendum Pg #5-7).

1. In United States v. Morgan, 346 U.S. 502 (1954): In this Supreme Court case, the Court recognized that a dismissal without prejudice can be modified to a dismissal with

prejudice if the prisoner's constitutional rights have been violated. This case establishes that constitutional violations can be a basis for modifying a dismissal.

2. <u>Murray v. Carrier</u>, 477 U.S. 478 (1986): This Supreme Court case established the "cause and prejudice" standard for overcoming procedural default. It held that if a petitioner can demonstrate "cause" for the default (i.e., a legitimate reason for the failure to comply with the procedural requirements) and "prejudice" resulting from the alleged constitutional violation, the court may consider the merits of the petitioner's claims. While this case primarily addresses procedural default, it could potentially support an argument for modifying a dismissal order if the prisoner can show cause and prejudice for the dismissal."

The prisoner establishes prejudice in this instant case due to Special Agent Stephen Hanley testimony that the prisoner gave a statement of guilt during a proffer session that suggested the prisoner knew he was guilty of filing fraudulent documents. Although the prisoner refuted the unrecorded and misrepresented statement of guilt, the lack of a dismissal with prejudice suggested the federal government was still in pursuit of charges against the prisoner. In addition the prisoner had 27 defense witnesses scheduled to testify on his behalf in December 2017 when trial was scheduled in San Diego County California, when trial was set and after filing a speedy trial motion subject IAD and California Penal Code 1832. The prisoner was prevented from disposing of those charges for nearly a year when he was transferred EDTX due to federal warrant, and over the prisoner's objection and request for an extension the prisoner was denied the opportunity to dispose of the charges when the prisoner was at his strongest.

Failure to grant a modification to the order of dismissal without prejudice to dismissal with prejudice would create the prescription for circumventing both the sixth amendment and IAD ignoring a prisoner's constitutional and statutory rights by manipulation of transfers, which is the expressed purpose for liberally construing IAD which seek do away with unnecessary transfers, particularly after a Speedy Trial Assertion has been made and there was no demand for the prisoner in any other jurisdictions. The District itself was responsible for the prisoner's return to the original place of his imprisonment, not the State of California (Sending State). Because the writ of habeas corpus ad prosequendum was for the temporary custody of the prisoner to allow them to dispose of all outstanding charges before being returned.

## VIII. <u>CONCLUSION</u>

Based on the spirit of the IAD and the STA, as well as case law and Supreme Court opinions, dismissal with prejudice under the Interstate Agreement on Detainers, 18 U.S.C.S. App. 2 Interstate Agreement on Detainers "IAD" and Speedy Trial Assertion, is the the only just outcome, due to the prisoner being prejudiced against because of the lengthy delays that were due to the government, not the prisoner, the prisoner's request that the Order of Dismissal Without Prejudice be modified to Dismissal With Prejudice,

**prevents a miscarriage of justice. This modification is crucial to uphold the prisoner's rights and promote the proper implementation of the Agreement and to avoid violating the prisoner's speedy trial rights,  due to the unnecessary shuttling and delays in prosecution and final disposition of all charges in a jurisdiction.**

**A fundamental defect that causes a miscarriage of justice refers to a serious error or flaw in the legal process that results in an unfair outcome, such as wrongful conviction or denial of a fair trial. Speedy trial violations occur when a prisoner's right to a timely trial is violated, while IAD (Interstate Agreement on Detainers) violations involve improper handling of a prisoner's transfer between jurisdictions for trial. Such violations can undermine the integrity of the legal proceedings and lead to unjust outcomes. It's important for legal systems to uphold these rights to ensure a fair and just process.**

**In light of the above federal case law and Supreme Court opinions, it is clear that the dismissal should be modified to a dismissal with prejudice. Granting relief in the form of a dismissal with prejudice is essential to uphold the principles of justice, protect the rights of the accused, and ensure compliance with the Interstate Agreement on Detainers and the Speedy Trial Act.**

**In support of this motion, the prisoner/defendant the undersigned hereby attests, under the penalty of perjury, that all exhibits attached hereto are accurate copies of the filed motions in both his state and federal cases to the best of his knowledge and belief.**

**Therefore, I respectfully request this Honorable Court's immediate reconsideration of its previous order of dismissal without prejudice to be modified to a dismissal with prejudice and grant a modification to its original order and grant other relief the Court deems appropriate as a result of this motion.  I trust that this motion will be given careful and expeditious consideration, and justice will be served. The prisoner has not filed a direct appeal through his appointed appeal counsel as of yet. Counsel indicated that the prisoner would have had to have preserved the issue during trial motions.**

Accordingly, Mr. Roland requests dismissal with prejudice of the First Order of t in this matter and for all other relief to which he is entitled.

Thank you for your immediate attention to this matter.

Respectfully submitted,

/s/_Clarence Roland_____
Clarence Roland
Pro Se


CERTIFICATE OF SERVICE

47

I hereby certify that between December 3 and December 7, 2023, I filed via mail the foregoing motion with the Clerk of the Court, which will send notification to Assistant United States Attorney Christopher Eason.


/s/ Clarence Roland_____
Clarence Roland

48